In the Matter of the Appeal of ANTONIO CERESINI and ELIZABETH CERESINI, his wife, to the Board of Adjustment under that ordinance of the city of Wilmington entitled "An Ordinance to Regulate and Restrict the location of Buildings and Structures, and the use of Buildings, Structures and Land; the height and size of Buildings and other Structures; the areas and dimensions of open spaces on building lots; and the density of Population."

(*December* 7, 1936.)

HARRINGTON, RICHARDS and SPEAKMAN, J. J., sitting.

*Paul Leahy* (of Ward and Gray) and *John P. Bolen* (of the Philadelphia, Pennsylvania, Bar) for the appellants.

*James R. Morford,* City Solicitor, and *Thomas Herlihy, Jr.,* Assistant City Solicitor, appeared for the City of Wilmington at the argument of the case, but filed no brief.

Superior Court for New Castle County, No. 271, September Term, 1935.

HARRINGTON, J., delivering the opinion of the Court:

This is a Court of Record and it is not denied that

under *Section* 8 of *Chapter* 22, *Volume* 39, *Laws of Delaware,* it not only has the power, but, by reason of its general jurisdiction in matters of a civil nature, is the appropriate court to review the proceedings of the Zoning Board of the City of Wilmington under a Writ of *Certiorari;* and this right is recognized by the settled practice.

*Section* 8 of *Chapter* 22, *Volume* 39, *Laws of Delaware,* also, provides for the issuance of a Writ of *Certiorari* to the Zoning Board on the presentation of a petition by any person aggrieved by a decision of that Board, specifying in what respect such decision is illegal; and the record shows that that provision of the statute was complied with, the writ issued and the record below sent to this court.

The common law Writ of *Certiorari* is in the nature of a writ of error (*King's Adm'x v. Hudson's Adm'r,* 2 *Harr.* 135; 1 *Woolley's Delaware Practice,* § 895) and as a general rule no evidence to supplement the record can be produced in a proceeding of that nature. *Thompson v. Thompson,* 3 *W. W. Harr.* (33 *Del.*) 593, 140 A. 697; *Bernhand v. Ennis,* 3 *W. W. Harr.* (33 *Del.*) 525, 140 *A.* 151; *Woolley's Del. Pr.,* §§ 897 and 898.

*Section* 8 of *Chapter* 22, *Volume* 39, *Laws of Delaware,* provides that the proceedings of the said Zoning Board may be reviewed under a Writ of *Certiorari,* but it also expressly provides that the record sent up under the direction of that writ may be supplemented by other evidence, if it shall appear that it is necessary for the proper disposition of the case. This provision of the statute is quoted in the statement of facts preceding this opinion, and will not be repeated here.

Where the validity of a zoning ordinance is involved and the question before the court is whether, though authorized by statute, it is a reasonable exercise of

the police powers of the State, and it is contended that the facts will show that its restrictions are purely arbitrary, it is important that all such facts as may be relied on to rebut the inferences in its favor shall appear in the record.

This has been repeatedly pointed out by the Supreme Court of the United States. *Chastleton Corp. v. Sinclair,* 264 *U. S.* 543, 44 *S. Ct.* 405, 68 *L. Ed.* 841; *Borden's Farm Products Co. v. Baldwin,* 293 *U. S.* 194, 55 *S. Ct.* 187, 79 *L. Ed.* 281.

Outside of a plot showing the location of the Ceresini property, and the relative locations and distances from the curb line of the street of that and other properties facing on Market Street in the same square, few facts were shown by the record sent up; and under the statute it is apparent that we were clearly within our rights in hearing evidence in this case. See *Hughes v. Board of Appeals,* 325 *Ill.* 109, 156 *N. E.* 350; *Park Ridge Fuel, etc., Co. v. City of Park Ridge,* 335 *Ill.* 509, 167 *N. E.* 119.

*Section* 2 of *Chapter* 22 of *Volume* 39 of the *Laws of Delaware* provides:

"For the purpose of promoting health, safety, morals, or the general welfare of the community, the legislative body of cities and incorporated towns is hereby empowered to regulate and restrict the height, number of stories, and size of buildings and other structures, percentage of lot that may be occupied, the size of yards, courts, and other open spaces, the density of population, and the location and use of buildings, structures and land for trade, industry, residence or other purposes."

*Section* 3 of the same Act further provides:

"For any or all of said purposes such legislative body may divide the municipality into districts of such number, shape, and area as may be deemed best suited to carry out the purposes of this Act; and within such districts it may regulate and restrict the erection, construction, reconstruction, alteration, repair or use of buildings, structures or land. All such regulations shall be uniform for each class or kind of buildings throughout each district but the regulations in one district may differ from those in other districts."

This statute was enacted in furtherance of the police powers of the State, and it is conceded that the Zoning Ordinance of the City of Wilmington is based on its provisions.

*Section* 2 of that Ordinance makes it unlawful "to use, erect, raise, enlarge, construct, reconstruct, or alter any building, structure or premises, or part thereof, unless in conformity with the provisions of this ordinance."

*Section* 4, in substance, permits in any business district:

(a) Buildings that may be used for any purpose permitted in any residential or apartment district; and accesssory structures of a certain character, and occupying a certain specified portion of the rear yard of a lot, may be used for commercial purposes.

(b) Any office or retail store or stand where goods are sold or services rendered, including private and public garages and filling stations.

(c) With certain limitations that need not be mentioned, stables for horses.

(d) Wholesale business establishments.

(e) Buildings used for storage purposes and incidental to any of the uses above enumerated.

(f) Among other things, with certain limitations as to the number of employees, the floor areas to be used, the steam pressure used, buildings for manufacturing, converting, fabricating, altering, furnishing or assembling purposes, not elsewhere prohibited, and which are minor necessary incidents to retail trade or service.

*Section* 9, among other things, relates to set-backs. With certain minor exceptions, such as baywindows, it provides that no building or structure shall be less than 10 feet from the principal street line in any Business A. Dis-

trict, unless the existing establishment alinement is less than 10 feet. That ordinance, also, provides:

"A closed porch is defined for the purposes of this Ordinance, as a porch the elevation of which shows material objects not in excess of forty per centum between the level of the floor and the porch plate, or shows material objects between the level of the floor and a level of 30 inches above such floor, and material objects to the extent of not more than forty per centum between such latter level and the bottom of the porch plate. Such porch may be enclosed in glass or screening.

"The Board of Adjustment, hereafter constituted, may permit the construction of a one-story closed porch as above defined, projecting not more than hereinbefore specified, provided assents thereto be expressed in writing by the owners of any and all lots immediately adjoining and bordering on the same street and also by a majority of all owners, by frontage, of lots bordering on the same street and within the same block, not including in either case the owners of any lot on which the corresponding setback of a then existing building is equal to or less than that which would be created on the lot in question."

Our Constitution in its Bill of Rights declares that no person shall be deprived of his property "unless by the judgment of his peers or by the law of the land" (*Section* 7), and the Fourteenth Amendment to the *Constitution of the United States* also declares that no State shall "deprive any person of life, liberty, or property, without due process of law."

But notwithstanding the broad import of the language of these constitutional provisions, there are certain implied limitations on the property rights guaranteed every person which may be imposed by the State in the exercise of its police power. The precise scope and extent of that power can not be stated, but as was said in *Mayor and Council of Wilmington v. Turk,* 14 *Del. Ch.* 392, 129 *A.* 512, 515, "It is a power which rests upon no express constitutional grant. It is a power evolved by judicial decision and is rooted in the conception that men in organizing the state and imposing upon their creature limitations for the protection of the citizen, did not intend thereby to secure to the individual citizen a right to obstruct the state

in the pursuit of such salutary measures of control as are reasonably calculated to protect society generally in its peace, good order, safety, health and morals."

It would seem that a slightly broader general statement as to the scope of the police powers of the State was made by our Supreme Court in *Van Winkle v. State,* 4 *Boyce* (27 *Del.*) 578, 91 *A.* 385, 392, *Ann. Cas.* 1916 *D,* 104. In that case, the court said that they extended "to such restraints and regulations as are reasonable and proper to protect the lives, health, comfort and property of its citizens and to promote the order, morals, safety, and welfare of society."

A somewhat similar statement was made by the Old Court of Errors and Appeals in *Philadelphia, W. & B. R. Co. v. Bowers.* 4 *Houst.* 506. See, also, *House v. Mayes,* 219 *U. S.* 270, 31 *S. Ct.* 234, 55 *L. Ed.* 213; *Jacobson v. Massachusetts,* 197 *U. S.* 11, 26, 25 *S. Ct.* 358, 49 *L. Ed.* 643, 3 *Ann. Cas.* 765; *State of Washington,* etc., *v. Roberge,* 278 *U. S.* 116, 49 *S. Ct.* 50, 73 *L. Ed.* 210, 86 *A. L. R.* 654; *Chicago, B. & Q. R. Co. v. Illinois,* 200 *U. S.* 561, 592, 26 *S. Ct.* 341, 50 *L. Ed.* 596, 4 *Ann. Cas.* 1175; *Sundlun v. Zoning Board,* 50 *R. I.* 108, 145 *A.* 451; *Standard Oil Co. v. Bowling Green,* 244 *Ky.* 362, 50 *S. W.* (2*d*) 960, 86 *A. L. R.* 648.

It must be conceded that the enjoyment of property does not consist alone in the holding of the legal title thereto. In fact, there can be no conception of property aside from its control, use and enjoyment; and upon its use and enjoyment necessarily depends its value. If, therefore, a Zoning Ordinance limits and restricts the use and enjoyment of property in matters having no real and substantial relation to the peace, good order, safety, health, morals, comfort or general welfare of the community in which the property is located, the owner thereof may appeal to the constitutional safeguards as fully as if the title itself were proposed to be

taken from him; and this is true. though such an ordinance is seemingly authorized by statute. *Mayor and Council of Wilmington v. Turk,* 14 *Del. Ch.* 392, 129 *A.* 512, *supra; Ambler Realty Co. v. Euclid (D. C.),* 297 *F.* 307.

In other words, under the guise of the police powers of the State, the use and enjoyment of private property can not be subject to arbitrary and unreasonable restrictions which clearly are not essential to the public good or general welfare of the community. *Euclid v. Ambler Realty Co.,* 272 *U. S.* 365, 47 *S. Ct.* 114, 71 *L. Ed.* 303, 54 *A. L. R.* 1016; *State of Washington, etc., v. Roberge,* 278 *U. S.* 116, 49 *S. Ct.* 50, 73 *L. Ed.* 210, 86 *A. L. R.* 654.

In considering what is a reasonable exercise of the police powers of the State we must bear in mind that if the validity of the legislation for zoning purposes is fairly debatable, the legislative judgment must be allowed to control. *Village of Euclid v. Ambler Realty Co.,* 272 *U. S.* 365, 47 *S. Ct.* 114, 118, 71 *L. Ed.* 303, 54 *A. L. R.* 1016.

In *Zahn v. Board of Public Works,* 274 *U. S.* 325, 47 *S. Ct.* 594, 595, 71 *L. Ed.* 1074, the court, also, aptly said:

"In such circumstances [meaning when the validity of a legislative act is fairly debatable], the settled rule of this court is that it will not substitute its judgment for that of the legislative body charged with the primary duty and responsibility of determining the question."

An ordinance, authorized by charter or other statutory provision, which excludes from a residential district an offensive trade or industry, or some other nuisance, is valid. *Village of Euclid v. Ambler Realty Co.,* 272 *U. S.* 365, 368, 47 *S. Ct.* 114, 71 *L. Ed.* 303, 54 *A. L. R.* 1016; *Cusack v. City of Chicago,* 242 *U. S.* 526, 37 *S. Ct.* 190, 61 *L. Ed.* 472, *L. R. A.* 1918 *A,* 136, *Ann. Cas.* 1917 *C,* 594; *State of Washington, etc., v. Roberge,* 278 *U. S.* 116, 49 *S. Ct.* 50, 73 *L. Ed.* 210, 86 *A. L. R.* 654; *Metzenbaum, the Law of Zoning,* 81, etc. See, also, *Sundlun v. Zoning Board,* 50 *R. I.* 108, 145 *A.* 451;

*Mayor and Council of Wilmington v. Turk,* 14 *Del. Ch.* 392, 129 *A.* 512.

In fact, in considering the police powers of the State, in so far as they can be invoked to regulate corporate acts when no regulatory power has been reserved in the charter, the Old Court of Errors and Appeals in *Philadelphia, W. & B. R. Co. v. Bowers,* 4 *Houst.* 506, 538, said:

"The maxim, *sic utere tuo ut alienum non laedas,* is that which lies at the foundation of the power."

And in the *Village of Euclid v. Ambler Realty Co.,* 272 *U. S.* 365, 47 *S. Ct.* 114, 118, 71 *L. Ed.* 303, 54 *A. L. R.* 1016, *supra,* the Court, in considering the validity of a zoning ordinance, and, therefore, whether it was a proper exercise of the police powers of the State, also said:

"In solving doubts, the maxim '*sic utere tuo ut alienum non laedas,*' which lies at the foundation of so much of the common law of nuisances, ordinarily will furnish a fairly helpful clew. And the law of nuisances, likewise, may be consulted, not for the purpose of controlling, but for the helpful aid of its analogies in the process of ascertaining the scope of, the power."

In the same case, the court, further said "Thus the question whether the power exists to forbid the erection of a building of a particular kind or for a particular use, like the question whether a particular thing is a nuisance, is to be determined, not by an abstract consideration of the building or of the thing considered apart, but by considering it in connection with the circumstances and the locality."

Perhaps we might, also, state that applying these principles, it is apparent that a regulatory Zoning Ordinance, authorized by statute, which would be reasonable and valid in a great city, might be clearly unreasonable and invalid in a community of a much less congested nature. *Euclid v. Ambler Realty Co.,* 272 *U. S.* 365, 47 *S. Ct.* 114, 71 *L. Ed.* 303, 54 *A. L. R.* 1016.

Such are the general principles applicable to cases of

this character, but the difficulty is to apply these principles to particular facts.

The appellants concede that in a proper case, and when the conditions reasonably require it, an ordinance authorized by statute, which fixes the height of buildings within reasonable limits, the character of the materials to be used in such buildings, the methods of construction, the adjoining areas which must be left open in order to minimize the danger of fire, or collapse, or the evils of over-crowding and the like, is a valid exercise of the police powers of the State. *Village of Euclid v. Ambler Realty Co.,* 272 *U. S.* 365, 47 *S. Ct.* 114, 71 *L. Ed.* 303, 54 *A. L. R.* 1016; see, also, *Cusack v. City of Chicago,* 242 *U. S.* 526, 37 *S. Ct.* 190, 61 *L. Ed.* 472, *L. R. A.* 1918 *A,* 136, *Ann. Cas.* 1917 *C,* 594.

They do not contend that the language of the statutory provision above quoted is not broad enough in its scope to authorize that part of *Section* 9 of the Zoning Ordinance of the City in controversy; but they do contend that, par-ticularly in a business district which permits stores or other buildings of the character permitted by that ordinance, the prohibition in *Section* 9 relating to the enclosure of a front porch with removable glass or screens can have no possible reasonable relation to the peace, good order, health, safety, morals, comfort or general welfare of the community, and is, therefore, void.

It is true that the 1929 amendment to *Article* 2 of the *Constitution* of 1897 (*Chapter* 1, *Volume* 35, and *Chap-ter* 1, *Volume* 36, *Laws of Delaware*) expressly authorizes the City of Wilmington to adopt zoning ordinances dividing that city into districts and regulating buildings and struc-tures in such districts according to their construction and the nature and extent of their use.

It is, also, true that that amendment further provides

that the exercise of such authority "shall be deemed to be within the police power of the State," but its apparent purpose was to delegate powers, and it is not and could not be contended that it in any way affects the general principles applicable in determining what is a proper and reasonable exercise of the general powers delegated to the city.

The population of the City of Wilmington does not materially exceed 110,000 inhabitants. That fact, though not in the record, may be judicially noticed. *Wig. on Ev.*, § 2577. The Ceresini house is located on Market Street in what the city has designated a Business A. District. In the immediate vicinity of that house, on the same side of the street, and, in fact, only separated from it by one house, there is a row of stores also facing on Market Street and covering a considerable portion of the block; and it is conceded that under the Zoning Ordinance in question the house of the appellants could be turned into a store and used for that purpose, even to the extent of enclosing with brick that part of the porch in front of it that is not within ten feet of the building line established by the city.

The contemplated enclosure of that porch was solely for domestic comfort and use, and a front porch so situated, otherwise clearly legal, when enclosed with removable glass or screens, would not be a fire hazard, a menace to life or health, or, in any sense, in the nature of a nuisance; nor using those words in their appropriate sense could it seriously affect the comfort or general welfare of the community. Bearing in mind that this porch is located in a Business A. District of the nature provided for in the Zoning Ordinance, and also bearing in mind the conditions actually existing in that neighborhood, that part of the ordinance in question would seem to be clearly unreasonable, and, therefore, void. See *Mulleady v. City of Trenton,* 156 A. 843, 9 *N. J. Misc.* 1102.

The correctness of this conclusion is practically con-

ceded by the attorneys for the city. In fact, the Zoning Ordinance in a subsequent clause also specifically provides than on the written consent of certain adjoining and other property owners in the same block and facing on the same street the city authorities "may" permit a porch to be enclosed. The effect of that provision need not be determined, but it might, perhaps, be contended with some force that the city had recognized that the prohibition as to enclosed porches was not vitally essential to the peace, good order, health, safety, morals, comfort or general welfare of the community. See *State of Washington, etc., v. Roberge,* 278 U. S. 116, 49 *S. Ct.* 50, 73 *L. Ed.* 210, 86 *A. L. R.* 654.

It is true that when plainly intended to promote the public welfare the right of a city, by a comprehensive zoning ordinance to establish building lines with reasonable setback provisions relating to the fronts of lots, has been upheld in many modern cases (*Gorieb v. Fox,* 274 *U. S.* 603, 47 *S. Ct.* 675, 71 *L. Ed.* 1228, 53 *A. L. R.* 1210; *Siegemund v. Building Commissioner,* 259 *Mass.* 329, 156 *N. E.* 852; *Metzenbaum The Law of Zoning* 100), but that is not the precise question before us, and it is, therefore, unnecessary for us to consider any of those cases.

The Plaintiffs in Error also contend that that part of *Section* 9 of the Zoning Ordinance already referred to which provides that on the consent, in writing, of certain adjoining or other property owners in the same block, and abutting on the same street, the City authorities "may" permit a porch to be enclosed, is illegal and void:

1. Because it gives the adjoining and other property owners in the same block the right to legislate, and is therefore an unlawful delegation of power to them.

2. In any event because it vests the City authorities with arbitrary and unlimited discretion, uncontrolled by any fixed and definite rule of action. See *Yick Wo v.*

*Hopkins,* 118 *U. S.* 356, 6 *S. Ct.* 1064, 30 *L. Ed.* 220; *Newton v. Belger,* 143 *Mass.* 598, 10 *N. E.* 464; 12 *A. L. R.* 1436. See, however, *Gorieb v. Fox,* 274 *U. S.* 603, 47 *S. Ct.* 675, 71 *L. Ed.* 1228, 53 *A. L. R.* 1210.

But it is unnecessary for us to consider either of these contentions. For the reasons above given the order made by the Zoning Board of the City is reversed.