NICHOLAS PAPAIOANU, THEOLOGIA PAPAIOANU, and JAMES TRAHOS,

Complainants,

*vs.*

"THE COMMISSIONERS OF REHOBOTH," a municipal corporation of the State of Delaware, and ROBERT CLARKE HILL,

Defendants.

"THE COMMISSIONERS OF REHOBOTH," a municipal corporation of the State of Delaware, and ROBERT CLARKE HILL,

Cross-Complainants,

*vs.*

NICHOLAS PAPAIOANU, THEOLOGIA PAPAIOANU, and JAMES TRAHOS,

Cross-Defendants.

*Sussex, June 2, 1941.*

*James M. Tunnell, Jr.,* for complainants and cross-defendants.

*Houston Wilson,* for defendants and cross-complainants.

THE CHANCELLOR: This cases involves the validity of a set-back building ordinance, enacted by "The Commissioners of Rehoboth," one of the defendants. Both the complainants' motion for a decree notwithstanding the defendants' answer, and their demurrer to the cross-bill raised that question.

The ordinance in controversy merely established the building line on that portion of lots abutting on streets, within the corporate limits of Rehoboth, and was not a part of a comprehensive zoning ordinance.

Nicholas Papaioanu and Theologia Papaioanu are husband and wife, and are the owners, as tenants by the entirety, of a one-half interest in a lot of land at the corner of Surf and Wilmington Avenues, in Rehoboth. The bill alleges that James Trahos, the other complainant, has no interest whatever therein. The lot in question is, however, a part of what is known as the Belhaven Hotel property, and the answer alleges that Trahos is interested as one of the managers and operators of that property. A building fronting on Surf Avenue had been erected on this lot many years before April 9th, 1938. It extended back, parallel with Wilmington Avenue, and the south side of it was approximately eleven inches from the street line of that avenue. Surf Avenue is covered at that point by the boardwalk which runs parallel with the ocean. The old building remained in substantially the same position and condition until some time in the month of December, 1939. The answer admits that at that time it was completely demolished and torn down for the stated purpose of erecting a new and

modern building. The defendants deny, however, that this in any sense, constituted a rebuilding, as is alleged by the complainants. The defendants also allege in their answer that they do not know whether the new building was erected on the old foundation, and, therefore, deny that allegation of the bill. The new building erected by the complainants was less than ten (10) feet from the northern line of Wilmington Avenue, and, therefore, violated the provisions of the ordinance of April 9th, 1938.

The defendants and cross-complainants claim that the ordinance in question was enacted pursuant to the provisions of *Chapter* 161, *Volume* 41, *Laws of Delaware,* and is in all respects valid. That section, among other things, gave the Commissioners of Rehoboth the express power to enact ordinances:

"* * * for the prevention of fire and the preservation of the beauty of the City, to regulate and control the manner of building or removing of dwelling houses or other buildings, and to establish a code for the same and to provide for the granting of permits for the same and to establish a building line for buildings to be erected; provided, that such building line shall not be established more than ten (10) feet back from the front line of lots; * * *."

Among other things, the power given is, therefore, to enact ordinances "for the prevention of fire and the preservation of the beauty of the City * * * and to establish a building line for buildings to be erected; * * *." But the set-back provided for must not exceed ten feet from the front line of lots. The ordinance passed by the Commissioners of Rehoboth complies with that provision. It, in part, provides:

"Section 2: That * * * no person * * * shall erect or cause to be erected any building nor any addition to any existing building upon any lot, piece or parcel of land within the confines of the corporate limits of the City of Rehoboth Beach, so that the same, or any part or portion thereof, shall extend or project a distance of less than ten (10) feet back from the front line or lines of any such lot, piece or parcel of land, without first having obtained the written consent or permit of The Commissioners of Rehoboth so to do."

"Section 4: That in granting of any such consent or permit for the erection of any proposed building or addition to any existing building, so as to permit the same or any part thereof to extend or project a distance of less than ten (10) feet back from the front line or lines of any lot, piece or parcel of land, within the confines of the city, The Commissioners of Rehoboth shall maturely consider those matters of public welfare and safety set forth in the Preamble thereof."

Notwithstanding *Section* 7 of the *Bill-of-Rights* incorporated in our *Constitution of* 1897 and the *Fourteenth Amendment to the Constitution of the United States,* when authorized by statute municipal ordinances, providing for reasonable, comprehensive zoning restrictions, are now usually held valid under the police powers of the State. *In re Ceresini,* 8 *W. W. Harr.* (38 *Del.*) 134, 135, 189 *A.* 443; *Appeal of Blackstone,* 8 *W. W. Harr.* (38 *Del.*) 230, 190 *A.* 597; *Euclid v. Ambler Realty Co.,* 272 *U. S.* 365, 47 *S. Ct.* 114, 71 *L. Ed.* 303, 54 *A. L. R.* 1016. *Gorieb v. Fox,* 274 *U. S.* 603, 47 *S. Ct.* 675, 71 *L. Ed.* 1228, 53 *A. L. R.* 1210. It would be difficult, if not impossible, to define the precise scope of those powers, but an ordinance based thereon must have some rational and necessary connection with the peace, good order, health, safety, morals or general welfare of the community. *In re Ceresini, supra*; *Appeal of Blackstone, supra; Euclid v. Ambler Realty Co., supra; Gorieb v. Fox, supra; Mayor, etc., v. Turk,* 14 *Del. Ch.* 392, 129 *A.* 512. In other words, under the guise of the police power of the State, the use and enjoyment of private property cannot be subjected to arbitrary and unreasonable restrictions which clearly are not essential to the general welfare of the community. *In re Ceresini, supra; Appeal of Blackstone, supra; Mayor, etc., v. Turk, supra; Passaic v. Paterson Bill Posting, etc., Co.,* 72 *N. J. L.* 285, 62 *A.* 267, 111 *Am. St. Rep.* 676, 5 *Ann Cas.* 995.

Because of the development and growth of municipalities and their consequent changing needs, there has been an obvious tendency in recent years toward a more liberal construction with respect to the validity of legislation, au-

thorizing the enactment of zoning ordinances. *Euclid v. Ambler Realty Co., supra; Gorieb v. Fox, supra; McQuillin Mun. Corp.,* § 1034. But an ordinance which is clearly based entirely on aesthetic considerations relates to mere luxuries or indulgences, which are in no sense a necessity, and is, therefore, ordinarily void, both under the State and Federal Constitutions. *Mayor, etc., v. Turk,* 14 *Del. Ch.* 392, 129 *A.* 512; *St. Louis Poster, etc., Co. v. St. Louis,* 249 *U. S.* 269, 39 *S. Ct.* 274, 63 *L. Ed.* 599; *Passaic v. Paterson Bill Posting, etc.,* 72 *N. J. L.* 285, 62 *A.* 267, 111 *Am. St. Rep.* 676, 5 *Ann. Cas.* 995; 43 *C. J.* 228. Where, however, other considerations, such as the prevention of fire and matters relating to the public health, are also necessarily involved the situation is quite different. *St. Louis Poster, etc., Co. v. St. Louis, supra;* 43 *C. J.* 228. Moreover, if the validity of the legislative act, on which a zoning ordinance is based, is fairly debatable, the legislative judgment must control. *Euclid v. Ambler Realty Co.,* 272 *U. S.* 365, 47 *S. Ct.* 114, 71 *L. Ed.* 303, 54 *A. L. R.* 1016; *In re Ceresini,* 8 *W. W. Harr.* (38 *Del.*) 134, 135, 189 *A.* 443. We must also bear in mind, however, that an ordinance which is a reasonable and necessary exercise of the police powers in a congested area, such as a large city, may be wholly arbitrary and unreasonable in a smaller community. *Euclid v. Ambler Realty Co., supra; In re Ceresini, supra.* But if any particular pertinent facts, bearing on that question, appear in the pleadings, or could be otherwise judicially noticed, they are not relied on by the complainants. Furthermore, they do not, and cannot, seriously deny that *Gorieb v. Fox,* 274 *U. S.* 603, 47 *S. Ct.* 675, 71 *L. Ed.* 1228, 53 *A. L. R.* 1210, sustains the contention of the defendants and cross-complainants that the Rehoboth set-back building ordinance of April 9th, 1938, does not violate *Section* 7 of the *Bill-of-Rights* of our *Constitution* or the due process clause of the *Fourteenth Amendment* to the *Federal Constitution.* See, also, *Weiss v. Guion, (D. C.)* 17 *F.* 2d 202, 53 *A. L. R.* 644; *Windsor v. Whitney,* 95 *Conn.* 357, 111 *A.* 354, 12 *A. L. R.* 669; 16 *C. J. S., Constitutional*

*Law* § 703, *p.* 1478. There are cases which reach a different conclusion (3 *McQuillan Mun. Corp.*, § 1039), but they cannot be reconciled, in principle, with the more modern and liberal rule announced in *Euclid v. Ambler Realty Company, supra;* though a much more comprehensive ordinance than one containing a mere set-back provision was involved in that case.

In *Gorieb v. Fox, supra,* [274, *U. S.* 603, 47 *S. Ct.* 677, 71 *L. Ed.* 1228, 53 *A. L. R.* 1210], the court in considering the validity of a set-back provision, pointed out that it was difficult to see "any controlling difference between regulations which require the lot owner to leave open areas at the sides and rear of his house and limit the extent of his use of the space above his lot and a regulation which requires him to set his building a reasonable distance back from the street."

In *Windsor v. Whitney, supra* [95 *Conn.* 357, 111 *A.* 357, 12 *A. L. R.* 669], the court also said that such ordinances "tend to preserve the public health, add to the public safety from fire, and enhance the public welfare by bettering living conditions and increasing the general prosperity of the neighborhood."

When no facts are relied on to show that the ordinance, under the particular circumstances, is arbitrary and unreasonable, and whether on mere aesthetic grounds or otherwise, these considerations are ordinarily controlling and sustain the apparent validity of the Rehoboth ordinance. Other facts may appear in the affidavits filed in connection with the question whether a preliminary injunction should issue, but they can play no part at this stage of the case.

Perhaps I should, also, point out that by an amendment, Section 25 of Article II of the Constitution of 1897 now provides:

"The General Assembly may enact laws under which municipalities, other than counties, may adopt zoning ordinances limiting and restricting to specified districts, and regulating therein buildings and structures, according

to their construction, and the nature and extent of their use, and the exercise of such authority shall be deemed to be within the police power of the State."

But "The Commissioners of Rehoboth" rely on the general police powers of the State, and do not rely on that provision of the Constitution. See *Appeal of Blackstone, 8 W. W. Harr.* (38 *Del.*) 230, 190 *A.* 597; *In re Ceresini, 8 W. W. Harr.* (38 *Del.*) 134, 135, 189 *A.* 443. Nor do I see anything in the exceptions, provided for in Section 4 of the Rehoboth ordinance, that is not authorized by a fair and reasonable construction of the real intended scope and meaning of *Chapter* 161, *Volume* 41, *Laws of Delaware.* As we have seen that Act authorizes and empowers "The Commissioners of Rehoboth" to enact ordinances for certain specified purposes "and to establish a building line for buildings to be erected; provided, that such building line shall not be established more than ten (10) feet back from the front line of lots; * * *."

The power given is, therefore, broad and general, and may, perhaps, include all lots within the corporate limits of Rehoboth, on which buildings may be subsequently erected; but, as a mere matter of construction, the exercise of that right by an ordinance, which may affect less than all of such lots, would seem to be perfectly consistent with the intent of the statute. See *Gorieb v. Fox,* 274 *U. S.* 603, 47 *S. Ct.* 675, 71 *L. Ed.* 1228, 53 *A. L. R.* 1210. A somewhat similar principle was applied, though to very different facts, in *Wilmington Trust Co. v. Wilmington Trust Co. ante p.* 121, 15 *A. 2d* 153. If the rule were otherwise, and no exceptions were permitted, there might be great hardships in some cases.

Conceding that *Chapter* 161, *Volume* 41, *Laws of Delaware* is an Act to reincorporate the Town of Rehoboth, and that a municipal corporation ordinarily has no powers which are not expressly conferred or necessarily implied from other powers granted, neither *Cutrona v. Wilmington,* 14

*Del. Ch.* 208, 124 *A.* 658, nor *Gray v. Wilmington,* 2 *Marv.* (16 *Del.*) 257, 43 *A.* 94, is inconsistent with this conclusion.

In *South Orange v. Heller,* 92 *N. J. Eq.* 505, 113 *A.* 697, cited by the complainants, the court seemed to carry the theory of strict construction beyond all reasonable deductions.

Furthermore, *Section 4* of the ordinance does not violate the equal protection clause of the Federal Constitution. That section provides that in making exceptions and granting building permits, which authorize a set-back of less than ten (10) feet from a street, the Commissioners "must maturely consider those matters of public welfare and safety set forth in the preamble" of the ordinance. The preamble recites:

"And Whereas, the public welfare and safety of the residents of the City of Rehoboth Beach require that adequate provisions be made for lawns and trees, for keeping of buildings removed, so far as is advisable, from the dust, noises and fumes of the streets; for adding to the attractiveness and comfort of homes; for the creating of better environment; for the securing of a greater distance between houses on opposite sides of the streets; thereby greatly reducing hazards from fire; for the protection of adjacent buildings from cutting off light and air; and for the protection of the traveling public against the dangers of intersecting streets from interference with the view thereof."

No question has been raised as to any acts done by the Commissioners under *Section 4* of the ordinance, but if there should be all of these matters, which are within the scope of the Act, would have to be considered by the Commissioners of Rehoboth in determining whether lots should be excepted in whole or in part from the ten foot provision of the set-back ordinance. Their powers are, therefore, as definitely circumscribed and regulated as is fairly and reasonably possible in such cases, and are not merely of an arbitrary and uncontrolled nature. *Gorieb v. Fox,* 274 *U. S.* 603, 47 *S. Ct.* 675, 71 *L. Ed.* 1228, 53 *A. L. R.* 1210. Moreover, the matters to be considered, in exercising the powers

given by the proviso of the ordinance, are much more definite and specific than those in the ordinance before the court in *Appeal of Blackstone,* 8 *W. W. Harr.* (38 *Del.*) 230, 190 *A.* 597. In that case, the Wilmington ordinance limited the variance to "appropriate cases" when there were "special conditions" and when the literal enforcement of the ordinance would result in "unnecessary hardships." Exceptions under such circumstances were held permissible under the Federal Constitution.

In *Gorieb v. Fox, supra,* the set-back lines were fixed under the exception provision of the ordinance. The court said:

"We cannot, of course, construe the ordinance as meaning that the power may be thus exerted [in an unfair and discriminatory matter]; nor may we assume in advance that it will be exercised by the council capriciously, arbitrarily, or with inequality. It will be time enough to complain, when, if ever, the power shall be thus abused."

No such abuse appears in this case. Nor is the fact that there is no provision for appeal to some other body or tribunal of any real importance in determining this question.

The defendants deny the complainants' allegation that the new store was erected on the foundation of the old building which was on the lot prior to April 9th, 1938, when the ordinance was enacted. For the purposes of this case, that allegation must, therefore, be taken to be true. But if it were untrue, it would be a matter of little moment, as in the absence of some unusual circumstances the new building would seem to come within the prohibition of the ordinance. The old building was torn down in the month of December of 1939, and the complainants began to erect the new building "as soon as practical thereafter"; but it does not appear when their operations actually started. The municipal authorities had the power to issue a permit to the complainants to build within less than ten feet from the Wilmington Avenue line; and, when signed by the proper authorities perhaps a permit given could not be revoked after the com-

plainants had incurred expense, pursuant to its apparent authority. *Freeman v. Hague,* (*N. J. Err. & App.*) 106 *N. J. L.* 137, 147 *A.* 553; *Wickstrom v. City of Laramie,* 37 *Wyo.* 389, 262 *P.* 22; *Dainese v. Cooke,* 91 *U. S.* 580, 23 *L. Ed.* 251. But no permit affecting their rights to build within less than that distance was ever issued by any officers of the town until February 10th, 1940. Moreover, a specific request for that authority was refused on December 8th, 1939. That permit purported to give permission to the complainants to build "within three feet of lot" fronting on Wilmington Avenue. Perhaps the resolution passed by the board was somewhat less specific, but it does appear from it that the board stated that is would not object to the adoption of any such building line. But whatever the effect of the permit might be, under some circumstances, it does not appear that the complainants really acted on it in building eleven inches from the line of Wilmington Avenue.

In order for any rule involving the principles of estoppel to apply, the fact that the complainants were prejudiced by the acts of the Commissioners of the town must clearly appear from the pleadings.

The complainants also claim that the ordinance in question is void because it delegated certain powers to the city manager, but those powers were merely of a ministerial nature.

The complainants' motion for a decree, notwithstanding defendants' answer, is, therefore, refused. Their demurrer to the defendants' cross-bill is also overruled.

An order will be entered in accordance with this opinion.