JOHN H. MCQUAIL and HELEN MCQUAIL, his wife, who brought suit with JOHN W. DUKES, et al.,
Plaintiffs Below, Appellants,

*vs.*

SHELL OIL COMPANY, a Delaware corporation, JOSEPH S. DAYTON, HARRY H. LAMBERT and HARRY B. ROBERTS, JR., constituting the Levy Court of New Castle County; and BAYARD A. VANDERGRIFT, WILLIAM R. MANNING, JOHN F. PORTER, CHARLES C. GAMMONS, and HARVEY G. COLE, constituting the New Castle County Zoning Commission, and GREY M. BUDD, FRANCES K. BUDD, EDWARD R. CORDERY, LUCY C. CORDERY, MARY C. DERRICKSON, Lone Manor Farms, Inc., a Delaware corporation, HARRY W. LYNCH, JR., MARY T. LYNCH, RUTH F. VOGEL, SUSANNA C. WALLACE, AUGUSTUS E. SHEATS, ELIZABETH S. SHEATS, DANIEL C. CASAPULLA, DOROTHY L. CASAPULLA, NOLAN V. WILLIAMS, META WILLIAMS, FREEMAN SEGARS, RUBY B. SEGARS, JOSEPH A. KREJCI, WILLIAM H. BRADY, JR., EDITH F. BRADY, MICHAEL KITSCHIK and ELENA KITSCHIK, Defendants Below, Appellees.

*Supreme Court, On Appeal, July 12, 1962.*

*William Prickett, Jr.,* of Prickett, Prickett & Tybout, Wilmington, for appellants.

*Edmund N. Carpenter, II,* and *Richard J. Abrams,* of Richards, Layton & Finger, Wilmington, for appellee Shell Oil Company.

*Clarence W. Taylor* and *Robert C. O'Hora,* Wilmington, for Levy Court of New Castle County and New Castle County Zoning Commission.

*William F. Lynch, II,* of Morris, James, Hitchens & Williams, Wilmington, for certain individual appellees.

*Clair J. Killoran,* of Killoran & VanBrunt, Wilmington, for certain individual appelles.

*David F. Anderson,* of Berl, Potter & Anderson, Wilmington, for appellee Ruth F. Vogel.

*Joseph Donald Craven,* Wilmington, for appellee Joseph A. Krejci.

SOUTHERLAND, C. J., and CHRISTIE and STIFTEL, JJ., sitting.

STIFTEL, Judge: Plaintiffs appeal from a judgment of the Court of Chancery upholding the decisions of the Levy Court of New Castle County and the New Castle County Zoning Commission, which approved a change of zone of land for Shell Oil Company from R-2 (agricultural and general purposes) to M-3 (heavy industry). The Court denied plaintiffs' prayers for injunctive relief against the defendants to prevent the reclassification from becoming effective because of the alleged invalid action of the Levy Court and the Zoning Commission.

Shell Oil Company is a large oil company with refineries in other parts of the United States, but not on the east coast. It wishes to operate a refinery in the east since the east coast is one of the largest petroleum markets in the United States. It submitted to experts the

problem of locating a site. As a consequence of their recommendation, Shell, in the latter part of 1960 and early in 1961, procured options to purchase fourteen parcels of land in the Deakyneville area of Blackbird Hundred, totaling approximately 3,345 acres, from their owners. This acreage comprised two large irregular-shaped tracts of land with a "corridor" of land between. The area in question is five miles from the nearest thickly populated area and is sparsely inhabited. It was zoned R-2 in 1954 by the Levy Court when that body adopted a zoning plan and regulations for those portions of the county lying outside of incorporated municipalities, pursuant to an enactment of the General Assembly. *9 Del.Code, Chap.* 26.

The land optioned by Shell is especially suited to its purposes because of its water frontage on the Delaware River, which will provide water transportation for large tankers. At the same time, the site is elevated sufficiently over the water so as not to be subject to floods and disasters. Furthermore, the affluence of water is desirable for the use of the refinery.

Since all of the properties that Shell desires are classified R-2, Shell and the owners of the land petitioned the New Castle County Zoning Commission on May 5, 1961, to reclassify the land in question to heavy industrial use (M-3), in accordance with *9 Del.Code, Chap.* 26. A hearing was had before the Commission on May 24, 1961. The Commission reserved decision in order to give the matter thorough study and to give the public an opportunity to submit their views. The majority of the Commission concluded that the entire land under consideration would find its best use in industrial purposes. The dissenting member of the Commission felt that the rezoning of some of the land involved was desirable but that something less than the entire area should be rezoned at that time.

The recommendations of the Commission, together with a map showing the changes suggested by the Commission, were submitted to the Levy Court of New Castle County by report dated July 17, 1961, in compliance with the law. A further hearing was held before the Levy Court on August 8, 1961. This hearing excited great local interest. After extensive testimony and public debate, the Levy Court, on August 29, 1961, by majority vote, made the legislative decision to

rezone 2,625 acres of the lands held on option by Shell to M-3 classification.

On September 11, 1961, a complaint was filed in the Court of Chancery by ten plaintiffs[1] requesting that Court to direct the Levy Court to rescind its resolution of August 29, 1961, and praying for injunctive relief against the use of the said parcels of land for any purpose in violation of the R-2 classification.

It was agreed that the Court would, at this time, consider only Count 1 of the complaint,[2] and the matter was submitted to the Court for decision on the record before the Zoning Commission and the Levy Court, together with depositions and other documents agreed upon by the parties.

On January 19, 1962, the Court of Chancery rendered its decision dismissing the first ·count of the complaint, *Dukes v. Shell Oil Company, ante p.* 174, 177 *A.2d* 785, and consequently upholding the action of the Levy Court. Reversal is here sought chiefly on the ground that the Levy Court failed to comply with the Delaware statute that the proposed use be in accordance with a plan for the area. In addition, plaintiffs contend that the Vice-Chancellor erred in excluding from his consideration the deposition testimony of the Levy Court Commissioners; that the proceedings before the Levy Court should be declared invalid because the Levy Court's attorneys, at the direction of the Commissioners, held a private meeting with

---

1. On September 19, 1961, during the proceedings in the Court of Chancery, three plaintiffs withdrew. Subsequently, after the decision of the Court of Chancery and before the appeal, five additional plaintiffs withdrew, leaving only two remaining plaintiffs, who reside some distance from the area involved, in Blackbird Hundred.

2. Count 2 of the complaint alleges causes of action anticipatory in nature. It deals primarily with plaintiffs' fear that the refinery in operation would be a nuisance in that it would discharge smoke and gases and would cause damage to the plaintiffs by destroying the aesthetic qualities of the area and depreciating land values and would deprive plaintiffs of use of waters now lying beneath their lands. As to this count, defendants moved to dismiss, and this matter is still before the Court of Chancery without a final judgment having been rendered.

Shell's attorney; and lastly, that the Levy Court improperly placed the burden of proof on the plaintiffs.

The plaintiffs' principal contention is that the Levy Court's action is invalid because it did not comply with the statute in that it failed to establish a plan for the area involved prior to or contemporaneously with the application to rezone the lands involved in the petition. The plaintiffs contend, in effect, that the Levy Court failed to establish a plan for the area for the future and acted solely for the benefit of Shell by spot-zoning only those lands in which Shell had a private interest.

Originally, Shell petitioned to have 3,345 acreas rezoned from R-2 to M-3. The Zoning Commission approved this request. The Levy Court subtracted approximately 600 acres from this request after acquiring the consent of Shell to do so, and finally approved a reclassification for 2,625 acres to M-3. The majority of the Levy Court wished this change so that a portion of the marshlands could be continued in its present use as a wildlife habitat. However, many acres of marshland were rezoned to M-3. The final decision of the Levy Court resulted in the reclassification of two large, irregular tracts which were separated from each other by a corridor. Plaintiffs contend that this "corridor" should have been taken into consideration by the Levy Court, and that it should have been rezoned at the same time as Shell's tracts. Thus, plaintiffs claim that the Levy Court did not rezone enough land. At the same time, they claim that the Levy Court rezoned too much land for Shell because Shell had no immediate use for much of the rezoned lands in the construction and operation of its refinery, and will hold much of the land for future industrial development, either for its own intended uses or for the use of other industries as it shall choose in the future who may purchase from Shell. Plaintiffs claim there is no inconsistency in their positions that "too much land was reclassified" or that "too little land was reclassified" for the reason that this merely establishes the fact that the Levy Court did not make a rational decision with a plan in mind for the future development of the entire area, but simply gave Shell substantially the rezoning requested because Shell would not accept less.

The General Assembly, pursuant to its power derived from the Constitution of the State of Delaware,[3] enacted legislation[4] which empowered the Levy Court to zone and control land use in New Castle County outside of any incorporated municipality. This legislation gave the Levy Court power to create zoning districts and to regulate the use of buildings and lands in those districts (§§ 2601 and 2602). In Section 2603, the following declaration of legislative policy in adoption of zoning regulations appears:

> "Regulations * * * shall be designated and adopted for the purpose of promoting the health, safety, morals, convenience, order, prosperity or welfare of the present and future inhabitants of this State * * *".

Section 2603 also establishes standards which require that such regulations be designed to lessen congestion in streets or roads; to secure safety from fires and other dangers; to provide adequate light and air; to prevent overcrowding of land; to prevent undue concentration or scattering of population; and to promote distribution of population and classification of land uses and distribution of land development which will tend to facilitate and provide adequate provisions for public requirements, transportation, water flowage, water supply, drainage, sanitation, educational opportunities, recreation, soil fertility, food supply, protection of the tax base, securing economy in governmental expenditures, fostering the State's agricultural and

---

3. *Article 2, Section 25, of the Constitution of the State of Delaware, Del. C.Ann.* provides as follows:

   "§ 25. Laws permitting zoning ordinances and use of land

   "Section 25. The General Assembly may enact laws under which municipalities and the County of New Castle may adopt zoning ordinances, laws or rules limiting and restricting to specified districts and regulating therein buildings and structures according to their construction and the nature and extent of their use, as well as the use to be made of land in such districts for other than agricultural purposes; and the exercise of such authority shall be deemed to be within the police power of the State. (*Amended* 36 *Del.Laws, Ch.* 1, *approved Mar.* 19, 1929; 48 *Del.Laws, Ch.* 79, *approved May* 11, 1949)."

4. Signed by Governor on *June* 15, 1951, and codified in 9 *Del.Code,* §§ 2601-2623.

other industries, and the protection of both urban and non-urban development. The regulations are required to be made with reasonable consideration as to the character of the particular district involved and its peculiar suitability for particular uses, and with a view to conserving the value of property and natural resources and the general and appropriate trend and character of the land, building and population development. (§ 2603(b)).

The legislation also authorized the appointment of a Zoning Commission (§ 2607). The powers and duties of this Commission include the duty to prepare a zoning plan or plans (including both the full text of the zoning regulation or regulations and the maps and representing the recommendations of the Zoning Commission) for certification to the Levy Court. This plan must establish districts or zones in which will be registered the use of lots, open spaces, and buildings for trade, industry, residence, recreation, public activities, etc.

In compliance with the statutory objectives, the Levy Court adopted the Zoning Code of New Castle County on September 28, 1954, using the procedure set out in 9 *Del.Code* § 2610.[5] The Zoning Code was first prepared for submission to the Levy Court by the New Castle County Zoning Commission in accordance with the statutory directive (§ 2607) after notice and hearing as required by 9 *Del.Code*

5. "§ 2610. *Adoption by Levy Court of zoning plan and regulations; public hearing and notice; consultative hearings; resubmission to Commission*

"(a) After receiving the certification of a zoning plan from the Zoning Commission and before the adoption of any zoning regulations, the Levy Court shall hold a public hearing thereon, of the time and place of which at least 30 days' notice shall be given by one publication in a newspaper of general circulation in the county. Such notice shall state the place at which the text and maps as certified by the Zoning Commission may be examined.

"(b) The Levy Court may conduct consultative hearings to aid it in determining the desirability of contemplated or recommended regulations.

"(c) No change in or departure from text or maps, as certified by the Zoning Commission, shall be made unless such change or departure shall first be submitted to the Zoning Commission for its approval or disapproval or suggestions. The Zoning Commission shall have 30 days from and after such submission within which to send its report to the Levy Court, but the Levy Court shall not be bound by the report."

§ 2608. This Zoning Code, as amended, is a publication containing fifty printed pages and charts together with a zoning map which is composed of a series of section maps on file in certain public places in the county. This code covers in detail almost every phase of zoning and land use in the county. The "Blackbird Hundred zoning map", which is a part of the Zoning Code of New Castle County[6] was adopted by the Levy Court on July 26, 1955[7] and Blackbird was designated primarily as an R-2 district[8] (agricultural and general purposes).

Article IV, Section 2, of the Zoning Code explains that: "While R-2 districts are designated as one of the R districts, they include large undeveloped areas for which the ultimate purpose cannot now be determined." It is further explained that: "It is expected that, as the development of New Castle County takes place, portions of these R-2 districts will be required for other uses." The Code further elaborates by stating that "Requests for rezoning such portions (of R-2) as residential, commercial or industrial districts will be studied and acted upon on their own merits, following the procedures outlined in Article XX (Amendment procedure) of this code."

6. Article III, Section 2, of the Zoning Code provides:

"Adoption of Zoning Map—The Zoning Map shall consist of a series of section maps which may be prepared and adopted separately. The Section maps shall be designated as Section No. 1, Section No. 2, etc. of the Zoning Map and shall bear the facsimile signature of the then members of the Levy Court. The section maps shall be filed in the offices of the Recorder of Deeds, the Regional Planning Commission, and the Building Inspector of New Castle County. All said maps and all explanatory matter thereon are hereby made a part of this code."

7. The Blackbird map was submitted to the Levy Court when the printed code was submitted, but after public hearings before the Levy Court, the maps of Section 7 (Pencader); Section 8 (St. Georges Hundred); Section 9 (Appoquinimink Hundred); and Section 10 (Blackbird Hundred) were returned to the Zoning Commission to consider the changes made by the Levy Court (§ 2610(c)). After certain modifications the maps were resubmitted and approved by the Levy Court on July 25, 1955.

8. The Zoning Code, in Article III thereof, designated fourteen types of districts in portions of New Castle County for which zoning maps were adopted under the code.

■ The statute (§§ 2601-2603) sets forth the purposes which the Commission and Levy Court had to keep in view at the time of the adoption of the original Zoning Code. The process of implementation of these purposes constitutes the plan as required by the statute. Even though changes in the basic plan as embodied in the Zoning Code are permitted under § 2611, this section does not specifically state that the changes must also conform to a plan. We think it clear, however, that the Legislature intended that any change in the Zoning Code be enacted by the Levy Court in conformity with the grant of power and purposes outlined in the statute with respect to the original Zoning Code. State ex rel. *Fairmount Center Co. v. Arnold,* 138 *Ohio St.* 259, 34 *N.E.2d* 777, 136 *A.L.R.* 840; 1 *Yokley, Zoning Law and Practice, 2d Ed., Sec.* 85, p. 189; 8 *McQuillan, Municipal Corporations,* § 25.67. It would be incomprehensible for the Legislature to require the Levy Court to consider certain factors and purposes when enacting the original Zoning Code and not to require their consideration when making amendments thereto, since, by amendment, the original Zoning Code could be completely revised without regard to these factors and purposes. *Putney v. Township of Abington,* 176 *Pa. Super.* 463, 108 *A.2d* 134, 138. Consequently, each amendment to or change in the Zoning Code must be in accordance with a plan.

■ The requirement that there be a plan is satisfied if the change of zoning classification bears some reasonable relation to the scheme of zoning adopted in the basic Zoning Code. *Putney v. Township of Abington, supra; Clark v. Town Council of Town of West Hartford,* 145 *Conn.* 476, 144 *A.2d* 327, 333; *Woodford v. Zoning Commission of Town of Ridgefield,* 147 *Conn.* 30, 156 *A.2d* 470, 472.

We find that the reclassification here under review does bear a reasonable relation to the scheme of zoning adopted in the basic Zoning Code and that it is, therefore, in accordance with a plan. This is so because the basic Zoning Code recognized that the R-2 classification for Blackbird Hundred was not permanent. The fact that further rezoning was necessary because the plan was incomplete as to certain lands not rezoned supports the action taken. When an R-2 classification was adopted the ultimate zoning of such area was

in effect delayed. The proper authorities have now acted and this action must be upheld unless it constitutes an abuse of discretion.

Plaintiffs claim that the action of the Levy Court was arbitrary and unreasonable and constitutes an abuse of discretion. Generally, zoning authorities, acting within their prescribed legislative powers, have a wide and liberal discretion. One who attacks an amendment as arbitrary and unreasonable has the burden of clearly showing that it is so. *Kozesnik v. Township of Montgomery,* 24 *N.J.* 154, 131 *A.2d* 1. Where it appears that honest judgment has been reasonably and fairly exercised after a full hearing, courts are cautious about disturbing the decisions of the legislative body. *Clark v. Town Council of Town of West Hartford,* 145 *Conn.* 476, 144 *A.2d* 327, 334.

If the issue of conformity with the requirements of the Zoning Act and Code is fairly debatable, the legislative judgment of the Levy Court prevails and it is our duty to affirm it. *In re Ceresini,* 8 *W.W.Harr.* 134, 189 *A.* 443, 449; *Bartlett v. Township of Middletown,* 51 *N.J.Super.* 239, 143 *A.2d* 778, 790, certification den., 28 *N.J.* 37, 144 *A.2d* 907. In fact, the judgment of the Levy Court on zoning matters is presumed to be reasonable and valid and beyond court interference unless shown to be arbitrary, unreasonable or capricious. *Mayor & Council of Wilmington v. Turk,* 14 *Del.Ch.* 392, 129 *A.* 512, 516; *Jones v. Zoning Board of Adjustment of Township of Long Beach,* 32 *N.J.Super.* 397, 108 *A.2d* 498, 502; *City of Miami Beach v. Wiesen, Fla.Sup.,* 86 *So.2d* 442. The burden of rebutting this presumption and establishing such arbitrariness is imposed on the plaintiffs in this action. *S & L Associates, Inc. v. Township of Washington,* 61 *N.J.Super.* 312, 160 *A.2d* 635, 640; *Helms v. City of Charlotte,* 255 *N.C.* 647, 122 *S.E.2d* 817, 820. Cf. *Appeal of Blackstone,* 8 *W.W. Harr.* 230, 190 *A.* 597, 607. The reasonableness and validity of each zoning case must be determined upon its own facts and circumstances.

In the light of the nature of the land in the vicinity of the rezoned area in Blackbird Hundred, the Commission and the Levy Court could have reasoned as follows: It is inconceivable that men could at this stage foretell the future use of this part of the county. To zone lands in Blackbird not involved in the case as residential,

as park lands, or as industrial is not to plan the future but to dream it, without any sound basis in fact. Good housekeeping suggests a realistic approach to a growing area by planning for an orderly development using the present embryonic industrial complex as the center from which planned development may grow with logic.

■ Such a view of the matter would not be unreasonable. Under the authorities cited, this is sufficient to sustain the action of these bodies. A more detailed plan was not necessary and indeed not practical at this time.

Much is made of the lack of a comprehensive plan as against any plan. In our view, the attempted distinction is unimportant. The rezoning here adopted is in furtherance of the overall plan required by the Zoning Act and the Zoning Code, and it is sufficient.

■ Plaintiffs' contention that the zoning boundaries were arbitrarily and indiscriminately set is based primarily on their contention that a portion of Cedar Swamp was irrationally zoned M-3 while approximately 600 acres thereof were allowed to remain R-2 without any apparent logical justification. Again, this was a legislative determination which this court will respect. *Papaioanu v. Commissioners of Rehoboth*, 25 *Del.Ch.* 327, 20 *A.2d* 447, 449. The Levy Court determined that the general welfare would best be served by allowing 600 acres to remain unchanged. However unwise plaintiffs may consider this action, it was not clearly arbitrary and unreasonable, and thus invalid. It must be remembered that zoning requires that a boundary be drawn at some point, even though practical conditions and geographical features may not change abruptly if the line is crossed. *Cf. Lewis v. District of Columbia*, 89 *U.S.App.D.C.* 72, 190 *F.2d* 25, 27.

Plaintiffs' argument that the Levy Court was guilty of spot-zoning in this instance cannot be sustained. The area involved in the present amendment consists of 2,625 acres. "Spot-zoning" is generally defined as an attempt to wrench a small lot or a small area from its environment and give it a new rating that disturbs the tenor of the community. *Winslow v. Zoning Board of City of Stanford*, 143 *Conn.* 381, 122 *A.2d* 789; see, in general, *Annotation: Spot-zoning*: 51 *A.L.R.2d* 263, 267, 272.

Normally, spot-zoning benefits a private interest and has no relation to the general public interest. The decision here to rezone Shell lands may benefit Shell but the presence of an industrial complex and beginning point for industry in Blackbird Hundred is designed to serve the general welfare of the area and not merely to benefit a particular individual or group of individuals.

Plaintiffs do not claim that the Levy Court acted fraudulently. Its decision to rezone Shell lands in Blackbird is a fairly debatable one upon which it had the exclusive legislative judgment. This Court cannot say from the record that its judgment was arbitrary and unreasonable. We can only conclude, therefore, that the Levy Court engaged in a valid exercise of its power by enacting the present amendment to the Zoning Code.

Plaintiffs in the Chancery action took the depositions of the members of the Levy Court. The Commissioners gave their reasons for deciding as they did. The reasons, plaintiffs claim, establish that the zoning change was invalid because arbitrary. The Vice Chancellor ruled that these depositions were inadmissible. Plaintiffs claim this was error.

A reading of the testimony so taken fails to disclose any evidence whatever of any fraud or bad faith on the part of the Commissioners. This is a sufficient reason to sustain the Vice Chancellor's ruling.

It is well established that the courts will not inquire into the motives of members of a legislative body to determine the validity of legislation except where there is a showing of fraud or bad faith. *Klaw v. Pau-Mar Construction Company*, 11 *Terry* 487, 135 *A.2d* 123; *La Rue v. Township of East Brunswick*, 68 *N.J.Super.* 435, 172 *A.2d* 691; *Rathkopf, The Law of Zoning and Planning, Chap.* 52. Plaintiffs argue, however, that the Klaw case is not dispositive of this question because the municipal legislators involved there were not parties to this action, whereas here the Levy Court Commissioners are parties defendant and actively participated in the proceedings below. This distinction is of no consequence. The rule is grounded upon considerations of public policy, and its application is not affected by the circumstance that the officers are parties to a law suit. See our

decisions in *Campbell v. Commissioners of Town of Bethany Beach,* *37 Del.Ch.* 233, 139 *A.2d* 493, and *Piekarski v. Smith,* 38 *Del.Ch.* 402, 153 *A.2d* 587, in both of which cases the municipal legislators were parties defendant.

In our opinion, the Vice Chancellor was right in sustaining defendants' objection to the testimony in the depositions.

Plaintiffs also claim that the Vice Chancellor refused to admit into evidence the statement of the majority of the Levy Court incorporated in their final resolution, which dealt with their reasons for deciding as they did. We do not so read the Vice Chancellor's opinion. No part of the statement of the Commissioners was ruled inadmissible. Even if he had so ruled, it would not matter. The stated reasons for a decision such as the one reached by two members of the Levy Court are a matter of public record and are to be taken as the premises on which public officers have taken official action. In this case, the stated reasons in no way impeach the result reached.

Plaintiffs present two other arguments to persuade this court to void the action of the Levy Court. First, they claim that the zoning decision is invalid because it was based on information obtained by the Levy Court's attorneys in a private meeting with Shell's attorney and therefore outside the record; and secondly, they claim that the decision of the Levy Court improperly placed upon them the burden of proof. These two arguments were made to the Vice Chancellor. He considered them in detail. We feel that his treatment of these matters is adequate and we therefore adopt his views on these two arguments and make them a part of this decision.

The judgment below is affirmed.