## GORIEB *v.* FOX et al.

CERTIORARI TO THE SUPREME COURT OF APPEALS OF THE STATE OF VIRGINIA.

No. 799. Submitted April 25, 1927.—Decided May 31, 1927.

1. Whether a provision of a city ordinance fixing a building line with relation to the location of a specified percentage of existing houses on the block is so vague in its general, or in some particular, applications as to amount to a denial of due process of law, is a question which can not be considered in a case where, upon the special facts, it was definite enough, and where the lot-owner had been excepted from the provision by the city council. P. 605.

2. Reservation of authority in a city council to make exceptions, in cases of exceptional hardship, from a regulation confining the construction of buildings to a building line set back from the street, does not violate the Equal Protection Clause.  P. 607.

3. Arbitrary or unfair use of such authority is not to be presumed. P. 607

4. State ordinances requiring lot owners, when constructing new buildings, to set them back a reasonable distance from the street lines of their lots, may have substantial relation to the public safety, health, morals, and general welfare, and, not being clearly arbitrary or unreasonable, do not deprive the lot owners of their property without due process of law.  *Eubank* v. *Richmond,* 226 U. 'S. 137, distinguished.  P. 608.

145 Va. 554, affirmed.

CERTIORARI (273 U. S. 687) to a judgment of the Supreme Court of Appeals of Virginia, which affirmed a judgment denying the petitioner a writ of mandamus against the city council of Roanoke.

*Messrs. W. V. Birchfield, Jr.,* and *G. A. Wingfield* were on the brief for petitioner.

· *Mr. Robert C. Jackson* was on the brief for respondents.

MR. JUSTICE SUTHERLAND delivered the opinion of the Court.

For the declared purpose of establishing building lines and regulating and restricting the construction and location of buildings, and for other purposes, an ordinance of Roanoke, Virginia, divides the city into " business " and " residential " districts.  Another ordinance, as amended July 11, 1924, creates a set-back or building line, with relation to the street, to which all buildings subsequently erected must conform.  The line must be at least as far from the street as that occupied by sixty per cent. of the existing houses in the block, the word " block " being de-

fined to mean only that portion on the same side of the street where the new building is proposed, bounded by the nearest intersecting streets to the right and left thereof. The city council by a proviso reserved to itself the authority to make exceptions and permit the erection of buildings closer to the street.

Petitioner owns several building lots within the residential district upon one of which he has a dwelling house. He applied to the city council for a permit to erect a brick store building upon an adjoining lot, and, after investigation, the council by resolution gave him permission to erect a brick store thirty-four and two-thirds feet back from the street line. He thereupon sought by mandamus to compel the council to issue a permit to occupy the lot for his building up to the street line, alleging the unconstitutionality of the set-back ordinance. The judgment of the court of first instance was against him, sustaining the validity of the ordinance and the action of the council. This judgment was affirmed by the state supreme court, 145 Va. 554, which held that the ordinance was valid and within the legislative grant of power. Acts of the Assembly, 1922, p. 46.

The ordinances summarized above were those in effect when the permit was granted by the council, and they alone are involved in this inquiry. The attack here is upon the set-back ordinance, and that is assailed as contravening the due process of law and equal protection clauses of the Fourteenth Amendment to the federal Constitution.

It is said, first, that the standard furnished is so vague and uncertain as in reality to be no standard at all, since the houses, or sixty per cent. of them, in any block may stand at a variety of distances from the street, in which event it cannot be determined from the ordinance whether

sixty per cent. of the houses nearest to the street or sixty per cent. of those farthest from the street or some other method of calculation is to govern. But in the present case this contention may be put aside, since (a) the permit was granted and the building line fixed under the proviso which reserved to the council in appropriate cases authority to fix the building line without reference to this limitation, and (b) as to the existing houses in the block in question, the actual differences in respect of the building lines upon which more than sixty per cent. of them stood are so slight as to be entirely negligible upon the question of certainty.

The evidence shows that the variation in the location of eighty per cent. of the existing houses was only one-tenth of a foot and, ignoring this inconsequential difference, the established building line was slightly over forty-two feet back from the street. The line designated for petitioner's building was substantially more favorable to him than this, being more than seven feet nearer the street. Whether the provision of the ordinance, fixing the line with relation to the location of sixty per cent. of the existing houses, in its general, or in some other specific, application is so vague as to amount to a denial of due process, is a question which does not concern petitioner, since, as applied to the facts in the present case, it is definite enough, and since, in any event, he has been excepted from the operation of the provision; and it does not appear that the alleged unconstitutional feature of which he complains has injured him or operated to deprive him of any right under the federal Constitution. *Oliver Iron Co.* v. *Lord,* 262 U. S. 172, 180–181; *Chicago Board of Trade* v. *Olsen,* 262 U. S. 1, 42; *Dahnke-Walker Co.* v. *Bondurant,* 257 U. S. 282, 289; *Jeffrey Mfg. Co.* v. *Blagg,* 235 U. S. 571, 576; *Plymouth Coal Co.* v. *Pennsylvania,* 232 U. S. 531, 544–545.

The proviso, under which the council acted, also is attacked as violating the equal protection clause on the ground that such proviso enables the council unfairly to discriminate between lot owners by fixing unequal distances from the street for the erection of buildings of the same character under like circumstances. We cannot, of course, construe the ordinance as meaning that the power may be thus exerted; nor may we assume in advance that it will be exercised by the council capriciously, arbitrarily, or with inequality. It will be time enough to complain when, if ever, the power shall be thus abused.

The proviso evidently proceeds upon the consideration that an inflexible application of the ordinance may under some circumstances result in unnecessary hardship. In laying down a general rule, such as the one with which we are here concerned, the practical impossibility of anticipating and providing in specific terms for every exceptional case which may arise, is apparent. And yet the inclusion of such cases may well result in great and needless hardship, entirely disproportionate to the good which will result from a literal enforcement of the general rule. Hence the wisdom and necessity here of reserving the authority to determine whether, in specific cases of need, exceptions may be made without subverting the general purposes of the ordinance. We think it entirely plain that the reservation of authority in the present ordinance to deal in a special manner with such exceptional cases is unassailable upon constitutional grounds. *Wilson* v. *Eureka City,* 173 U. S. 32, 36–37; *In re Flaherty,* 105 Cal. 558, 562; *Ex parte Fiske,* 72 Cal. 125, 127.

*Yick Wo* v. *Hopkins,* 118 U. S. 356, upon which petitioner relies, is not to the contrary. The ordinance there involved vested uncontrolled discretion in the board of supervisors, and this discretion was actually exercised for the express purpose of depriving the petitioner in that

case of a privilege that was extended to others.  See *Crowley v. Christensen,* 137 U. S. 86, 94.

The remaining contention is that the ordinance, by compelling petitioner to set his building back from the street line of his lot, deprives him of his property without due process of law.  Upon that question the decisions are divided, as they are in respect of the validity of zoning regulations generally.  But, after full consideration of the conflicting decisions, we recently have held, *Euclid v. Ambler Co.,* 272 U. S. 365, that comprehensive zoning laws and ordinances, prescribing, among other things, the height of buildings to be erected (*Welch v. Swasey,* 214 U. S. 91) and the extent of the area to be left open for light and air and in aid of fire protection, etc., are, in their general scope, valid under the federal Constitution.  It is hard to see any controlling difference between regulations which require the lot-owner to leave open areas at the sides and rear of his house and limit the extent of his use of the space above his lot and a regulation which requires him to set his building a reasonable distance back from the street.  Each interferes in the same way, if not to the same extent, with the owner's general right of dominion over his property.  All rest for their justification upon the same reasons which have arisen in recent times as a result of the great increase and concentration of population in urban communities and the vast changes in the extent and complexity of the problems of modern city life. *Euclid v. Ambler Co., supra,* p. 386.  State legislatures and city councils, who deal with the situation from a practical standpoint, are better qualified than the courts to determine the necessity, character and degree of regulation which these new and perplexing conditions require; and their conclusions should not be disturbed by the courts unless clearly arbitrary and unreasonable. *Zahn v. Board of Public Works, ante,* p. 325 and authorities cited.

The property here involved forms part of a residential district within which, it is fair to assume, permission to erect business buildings is the exception and not the rule. The members of the city council, as a basis for the ordinance, set forth in their answer that front-yards afford room for lawns and trees, keep the dwellings farther from the dust, noise and fumes of the street, add to the attractiveness and comfort of a residential district, create a better home environment, and, by securing a greater distance between houses on opposite sides of the street, reduce the fire hazard; that the projection of a building beyond the front line of the adjacent dwellings cuts off light and air from them, and, by interfering with the view of street corners, constitutes a danger in the operation of automobiles. We cannot deny the existence of these grounds— indeed, they seem obvious. Other grounds, of like tendency, have been suggested. The highest court of the state, with greater familiarity with the local conditions and facts upon which the ordinance was based than we possess, has sustained its constitutionality; and that decision is entitled to the greatest respect and, in a case of this kind, should be interfered with only if in our judgment it is plainly wrong, *Welch* v. *Swasey, supra,* p. 106, a conclusion which, upon the record before us, it is impossible for us to reach.

The courts, it is true as already suggested, are in disagreement as to the validity of set-back requirements. An examination discloses that one group of decisions holds that such requirements have no rational relation to the public safety, health, morals, or general welfare, and cannot be sustained as a legitimate exercise of the police power. The view of the other group is exactly to the contrary. In the *Euclid* case, upon a review of the decisions, we rejected the basic reasons upon which the decisions in the first group depend and accepted those upon which rests the opposite view of the other group.

Nothing we think is to be gained by a similar review in respect of the specific phase of the general question which is presented here. As to that, it is enough to say that, in consonance with the principles announced in the *Euclid* case, and upon what, in the light of present day conditions, seems to be the better reason, we sustain the view put forward by the latter group of decisions, of which the following are representative: *Windsor* v. *Whitney*, 95 Conn. 357; *Matter of Wulfsohn* v. *Burden*, 241 N. Y. 288, 303; *Lincoln Trust Co.* v. *Williams Bldg. Corp.*, 229 N. Y. 313.

*Eubank* v. *Richmond*, 226 U. S. 137, which is petitioner's main reliance upon this point, presented an altogether different question. The ordinance there considered *required* the committee on streets to fix a building line upon the *request* of the owners of two-thirds of the property abutting on any street. The ordinance was held bad by this court (p. 143) because it left no discretion in the committee. "The action of the committee is determined by two-thirds of the property owners. In other words, part of the property owners fronting on the block determine the extent of use that other owners shall make of their lots, and against the restriction they are impotent. This we emphasize. One set of owners determine not only the extent of use but the kind of use which another set of owners may make of their property." And the court expressly declined (p. 144) to consider the power of a city to establish a building line or regulate the structure or height of buildings.

Since upon consideration we are unable to say that the ordinance under review is " clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare," we are bound to sustain it as constitutional. *Euclid* v. *Ambler Co.*, *supra*, p. 395.

*Judgment affirmed.*