RICHARD J. O'CONNELL & others *vs.* CITY OF BROCKTON
BOARD OF APPEALS & others
(and a companion case).

Plymouth. December 6, 1961. — April 20, 1962.

Present: WILKINS, C.J., SPALDING, WILLIAMS, WHITTEMORE,
& SPIEGEL, JJ.

*Zoning,* Validity, Setback, Height of building, Yard requirement. *Constitutional Law,* Zoning, Police power, Due process of law. *Municipal Corporations,* By-laws and ordinances. *Words,* "Story."

A municipal zoning ordinance providing "Where in a residence district . . . at least one-half of the buildings situated on either side of a street between two intersecting streets conform to a minimum setback line, no new building shall be erected . . . to project beyond such setback line" was so vague as to be void under the Fourteenth Amendment to the Federal Constitution and under art. 12 of the Declaration of Rights of the Massachusetts Constitution. [210]

A basement or cellar partly below ground was not intended to be counted as a "story" within a zoning ordinance of a city dealing with the "Height" of buildings and providing that "No building shall be erected to a height in excess of forty feet, and no building used in any part for residence purposes by more than one family shall be in excess of two and one-half stories." [212–213]

TWO BILLS IN EQUITY, filed in the Superior Court on September 15, 1960, and September 29, 1960, respectively.

The suits were heard by *Gourdin,* J.

*Cortland A. Mathers,* for the plaintiffs.

*Ermon L. Markella,* Special City Solicitor, for the defendant City of Brockton Board of Appeals.

*Augustus P. Vitali,* for the defendant Orchard Estates, Inc.

SPALDING, J.   This is an appeal from a final decree of the Superior Court under G. L. c. 40A, § 21 (as amended through St. 1958, c. 175), upholding the defendant board of appeals of the city of Brockton in approving the issuance of certain building permits by the city's building inspector to the defendant Orchard Estates, Inc. (Orchard).

The evidence, which is before us, discloses the following: Orchard is the owner of certain land abutting on the northerly side of West Elm Street in the city of Brockton. The land is bounded on the west by the lot of the plaintiff Richard J. O'Connell and on the east by the lot of the plaintiff Frank Remmes. Across the street, on the southerly side of West Elm Street, there are four houses. The setback distances of the houses on the northerly side of the street are thirty-five feet (O'Connell house) and eighty-seven feet (Remmes house). On the southerly side, the setbacks are between twenty-nine feet (or twenty-one and one-half feet if porches are included) and slightly over thirty feet. All of the above described property is located in a "C Bulk District" and a "Residence Use District" as set forth in the Revised Ordinances of Brockton.

In the fall of 1959, Orchard applied to the building inspector of the city for a permit to construct an apartment house on its land. The permit was granted and construction was started immediately. The plaintiffs, in November, 1959, sought to enjoin further construction, without success. At a hearing before the board of appeals, the action of the building inspector in granting the permit was sustained. Thereupon the plaintiffs appealed to the Superior Court.

The specifications of the apartment house are as follows: Height of building above lot grade: twenty-two feet. Height of building above street grade: twenty-three feet, four and one-half inches. Number of levels: three. The bottom level has three apartments; the middle and top levels each have four apartments. Setback from street: twenty-seven and one-half feet. Side-yard distance from O'Connell lot: twenty feet, seven inches (or fifteen feet,

eleven inches if stairwell of apartment house is counted).

Additional permits were issued to Orchard in the summer of 1960 for two more apartment houses on this land, which are substantially identical with the one . described above. The board of appeals sustained the action of the building inspector in granting permits for these two buildings. The plaintiffs appealed to the Superior Court, and the two appeals were consolidated. The judge found that "the action of the board was reasonable and proper and in compliance with the purpose and intent of a vaguely worded zoning by-law."

1. Whether the setback zoning requirement is being violated turns on a construction of the following ordinance:

"Where in a residence district . . . at least one-half of the buildings situated on either side of a street between two intersecting streets conform to a minimum setback line, no new building shall be erected . . . to project beyond such setback line . . ." (Revised Ordinances of Brockton [1949] c. 26, § 11).

In the view we take, the facts of this case are unimportant. We are of opinion that this ordinance is so vague as to be void under the Fourteenth Amendment to the Constitution of the United States and under art. 12 of the Declaration of Rights of the Constitution of the Commonwealth. The ordinance seeks to proscribe certain conduct while leaving unanswered several questions.

First, does the setback provision contemplate considering only the side of the street on which the new building is to be erected, or both sides? The word "either" is ambiguous in this setting. The plaintiffs urge the court to consider only one side. Their argument is that, if we were to look at the setbacks on both sides of the street, situations could arise where a new building would have to be placed way out of line with houses on its side of the street. For an example, the plaintiffs suggest that we assume that the north side of a street has ten houses, each set back seventy-five feet, and the south side has nine houses, each of which is set back fifteen feet, and a vacant lot. An application of the

"both sides" construction would allow the neighbors to force a new house built on the south-side vacant lot to be set back seventy-five feet. The defendants argue that the "both sides" construction of the ordinance is more reasonable in that zoning ordinances should be construed to apply "uniformly." We assume that the plaintiffs' "one-side" construction is correct, but it would not change the result.

An even more perplexing problem arises when one tries to ascertain what is intended by the fifty per cent minimum setback line contemplated by the ordinance. This problem arises whether one looks to one side or both sides of the street in question. Suppose a row of houses set back from the street eighteen feet (house A), twenty feet (house B), twenty-two feet (house C), twenty-four feet (house D), and twenty-six feet (house E). In determining the minimum setback contemplated by the ordinance, there are various possibilities. (1) Eighteen feet is one possibility, on the ground that *all* five houses conform to this setback. This appears to be the construction placed upon the ordinance by the parties, the only difference between them being whether "either" means one side of the street or both sides. (2) Twenty feet is a possibility, since over fifty per cent of the houses (B, C, D, and E) conform to a setback of twenty feet. (3) Twenty-two feet is a possible construction since over fifty per cent of the houses (C, D, and E) conform to a setback of this footage. (4) Twenty-four feet is a fourth possibility if we *average* over fifty per cent of the houses (C, D, and E). This averaging technique can be repeated with any combination of at least fifty per cent of the houses.

The preceding alternatives all assume that the ordinance looks to the fifty per cent or more farthest from the street. However, it may well have been intended to look to the fifty per cent or more of the houses nearest to the street (see *Gorieb* v. *Fox,* 274 U. S. 603, 605–606), in which event a quite different result is reached.

It may even be argued that the ordinance should be construed to have no application in the situations above described on the ground that there is no setback line to which

one can conform.   Under this view, in the absence of some existing substantial uniformity of setbacks on the street, the ordinance was not meant to apply.

We have no doubt that the city had the power to establish setbacks.   See *Slack* v. *Inspector of Buildings of Wellesley*, 262 Mass. 404.   But an ordinance or by-law imposing such restrictions on the use of property ought not to stand when it is so vague and ambiguous that its meaning can only be guessed at.   "A 'statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law.' . . .   And this is no less true of a municipal ordinance or regulation." *Commonwealth* v. *Carpenter*, 325 Mass. 519, 521, and cases cited.   The foregoing analysis demonstrates that this setback ordinance belongs to this class.   See *Gorieb* v. *Fox*, 274 U. ·S. 603, 605-606.

2.   The Revised Ordinances of Brockton, c. 26, § 11, provide:   "Height.   No building shall be erected to a height in excess of forty feet, and no building used in any part for residence purposes by more than one family shall be in excess of two and one-half stories."[1]

The ordinance (§ 1 [r]) refers to the building code in c. 4 for definitions of terms.   The following definitions are found in c. 4, § 1: "Basement.   The story of a building partly but not more than one-half below the level of the grade of the street."   "Cellar.   A story whose height is more than one-half below the level of the grade of the street."   "Story.   That part of any building comprised between any floor and the floor or roof next above. . . ."

The plaintiffs contend that these definitions, no matter how one views the bottom floors of Orchard's buildings, compel the conclusion that, within the meaning of the ordinance, the buildings are three story structures.   Under

---

[1] A half story is defined in c. 26, § 1 (p), as "a story which is situated in a sloping roof, the floor area of which does not exceed two-thirds of the floor area of the story immediately below it and which does not contain an independent apartment."

this view, the judge's finding that the first floor was a "cellar" is of little significance for, whether a cellar or a basement, it is still a story. We do not agree. The provision limiting a building to two and one-half stories is found in a subsection which deals with "Height." The purpose of the story limitation is to put an upper limit on the size of multiple family dwelling units which may in certain cases be even more restrictive than the forty feet height limitation. We are of opinion that a cellar or a basement was not intended to be counted as a "story" as that term is used in c. 26, § 11. If we were to accept the plaintiffs' argument, the result would be that residences occupied by more than one family which had either a cellar or a basement could have only one full floor above the ground, plus a half story. No such limitation is placed on single family residences. In view of the constitutional doubts raised by such a construction, we prefer to read the height ordinance as not intending to treat cellars or basements as stories.

3. The plaintiffs contend that there has been a violation of c. 26, § 11, which sets side-yard requirements by providing as follows: "Side yards. No side yard shall be less than eight feet wide for a building two stories or less in height and forty feet or less in length. For each additional story in height the width of such side yard shall be increased three feet, and for each additional eight feet or fraction thereof in length the width of such side yard shall be further increased one foot."

It is conceded that to the basic eight foot side-yard requirement three more feet must be added on account of the length of the buildings in question. Additional side-yard footage is required in the event that there are projections over the setback line. But in view of the results we reach on the setback requirement and the story limitation, there was no violation of the side-yard provision.

*Decree affirmed in each case.*