**Barney L. CHAVOUS and Odessa K. Chavous, Plaintiffs,**

v.

**The SOUTH CAROLINA COASTAL COUNCIL, a South Carolina government agency, and John C. Hayes, III, Chairman of the South Carolina Coastal Council, and H. Wayne Beam, Executive Director of the South Carolina Coastal Council, Defendants.**

**Civ. A. No. D:89–0216–1.**

United States District Court, D. South Carolina, Beaufort Division.

March 27, 1990.

---

John V. Esposito, Hilton Head Island, S.C., and Randall M. Chastain, Columbia, S.C., for plaintiffs.

C.C. Harness, III, Gen. Counsel, South Carolina Coastal Council, Charleston, S.C., and William L. Want, Charleston, S.C., for defendants.

ORDER

HAWKINS, Chief Judge.

This is an action charging the defendants with violations of the due process and just compensation provisions of the fifth amendment to the United States Constitution. On October 13, 1989, this court filed an order directing the Clerk of Court to enter judgment in the plaintiffs' favor on the takings claim. Also, in that order consideration of the proper remedy was postponed pending the completion of supplemental proceedings on that issue.

The parties appeared before this court, sitting without a jury, on January 23, 1990, for oral argument on the damages issue. At the conclusion of that hearing, the parties were granted a brief period of time in which to file any additional information. Having considered the oral presentations and the proposed findings of fact and conclusions of law submitted by the parties, the court makes the following Findings of Fact and Conclusions of Law in accordance with Rule 52(a) of the Federal Rules of Civil Procedure.

## FINDINGS OF FACT

1. The plaintiffs, Barney and Odessa Chavous, own a parcel of real property at North Forest Beach on Hilton Head Island, South Carolina, which fronts upon and is adjacent to the Atlantic Ocean.

2. When the plaintiffs purchased the subject property in July, 1984, it was an unimproved parcel with a fair market value of one hundred ten thousand dollars ($110,-000.00). Nonetheless, all utility services are accessible from the parcel and it is zoned for residential use. The plaintiffs purchased the property for the purpose of building a residential dwelling that they could use and that could be leased out to others visiting Hilton Head Island. In preparation for construction of such a dwelling, the plaintiffs obtained a construction permit from the City of Hilton Head Island, and expended approximately ten thousand dollars ($10,000.00) for architect fees, drawings, and related costs.

3. On June 2, 1988, the South Carolina General Assembly approved certain amendments (hereafter referred to as The Beachfront Management Act) to the South Carolina Coastal Zone Act of 1977[1] which, *inter alia,* placed limitations on the use of real property adjacent to the Atlantic Ocean.[2] The bill containing those amendments was signed by the Governor on June 7, 1988, and it became effective as of July 1, 1988. As a result of the enactment of this legislation, the plaintiffs were prohibited from improving their property with a structure. The plaintiffs then instituted the instant action, and, in an order dated October 13, 1989, the court concluded that the aforementioned prohibition amounts to a taking of property without just compensation.

4. Immediately prior to the enactment of the Beachfront Management Act the plaintiffs' property had a fair market value of one hundred fifty thousand dollars ($150,000.00). Based upon the affidavit of Steven V. Linsday, the court concludes that the value of properties not subject to the restrictions contained in the Beachfront Management Act appreciated twenty to twenty-five percent (20%–25%) during the period from June 30, 1988, to January 31, 1990. Moreover, the court concludes that due to the Beachfront Management Act provisions the value of the plaintiffs' property did not increase during the same period.

5. In his affidavit Mr. Linsday also attests that the passage of the Beachfront Management Act has deprived the plaintiffs of net rental income in the amount of one thousand three hundred eighty-four and 00/100 dollars ($1,384.00) per month. While this calculation contains deductions from the gross rental proceeds for real estate taxes, insurance, and maintenance, it omits an important item of overhead. As mentioned above, the parcel is presently unimproved and could not be used for residential purposes until a residence of some type is constructed on the property. The monthly cost of such a dwelling would be a significant deduction from gross rental proceeds that would likely exceed all other costs combined. Accordingly, this item of damage is too speculative to warrant serious consideration.

6. During the period from July 1, 1988, through January 31, 1990, the plaintiffs paid a total of nine thousand eight hundred dollars ($9,800.00) in mortgage interest with respect to the subject property. Additionally, for that same period, the plaintiffs have paid real estate taxes in the total amount of two thousand five hundred dollars ($2,500.00).

7. Finally, the court finds as a fact that the plaintiffs have been denied the use of one hundred fifty thousand dollars ($150,000.00) for the period from July 1, 1988, through January 31, 1990. Using the statutory interest rate of eight and three-quarters percent (8¾%), the amount of that loss is equal to twenty thousand seven hundred eighty-one dollars ($20,781.00) for the relevant period.

## CONCLUSIONS OF LAW

1. This court has jurisdiction over the parties to this action.

2. This court has jurisdiction over the subject matter of this dispute pursuant to 28 U.S.C. § 1331 and the doctrine of pendant claim jurisdiction.

3. The defendants' invocation of the eleventh amendment to the United States Constitution will be considered first because discussion of that issue may obviate the need to consider the plaintiffs' claim for pecuniary relief.[3] The eleventh amend-

---

1. The Coastal Zone Act of 1977 is codified in Title 48, Chapter 39 of the Code of Laws of South Carolina.

2. The Beachfront Management Act is codified beginning at S.C.Code Ann. § 48–39–270 (Law. Co-op. Pub. Co. Supp.1989), and the relevant provisions are discussed fully in this court's order dated October 13, 1989), and the relevant provisions are discussed fully in this court's order dated October 13, 1989.

3. Because an action against a state official in his official capacity is treated as an action against the state, *See Kentucky v. Graham,* 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985), the court will not address the interests of each defendant separately.

ment states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Because the eleventh amendment was designed to "countermand[ed] any judicial inclination to interpret article III as a self-executing abrogation of state immunity from suit ... the Supreme Court, in deciding eleventh amendment cases, has focused not on the language of the eleventh amendment, but on the concept of sovereign immunity of which it is a reminder and 'exemplification.'" Tribe, *American Constitutional Law* § 3–25 (2nd ed. 1988).

4. Initially, this approach led to an expansion of eleventh amendment immunity beyond the express terms of the amendment. *See Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890) (eleventh amendment protects State from suit instituted by one of its own citizens even if action arises under federal law). More recently, courts have defined a number of situations in which a federal court may assume jurisdiction of claims against a State. Foremost among these doctrines is the rule of *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), which allows a court to award prospective injunctive relief against state officials acting in their official capacity. There is no question that the court may award injunctive relief against defendants Hayes and Beam; nonetheless, the plaintiffs offer several arguments in support of their position that monetary relief is available in this instance.[4] Those contentions will be considered *seriatim*.

■ 5. Initially, the plaintiffs aver that the defendants have waived their eleventh amendment immunity by actively participating in this action. The Supreme Court has stated that although a state may waive its constitutional immunity from suit by entering a general appearance in federal

litigation, such a waiver will not be lightly inferred. *Petty v. Tennessee–Missouri Bridge Commission* 359 U.S. 275, 79 S.Ct. 785, 3 L.Ed.2d 804 (1959). Courts interpreting this notion of waiver have concluded that a state does not waive its eleventh amendment immunity by merely entering a general appearance and defending an action on the merits. *Aerojet–General Corp. v. Askew*, 453 F.2d 819 (5th Cir.1971), *cert. den.* 409 U.S. 892, 93 S.Ct. 110, 34 L.Ed.2d 149 (1972). In support of their position the plaintiffs point out a number of activities undertaken by the defendants during their defense of this action; however, the plaintiffs have not produced any evidence of an affirmative waiver of eleventh amendment immunity such as the filing of a counterclaim. *See Mohegan Tribe v. State of Connecticut*, 528 F.Supp. 1359 (D.Conn.1982). Further, in light of the limited powers granted to the Coastal Council by S.C.Code Ann. § 48–39–50, there is no evidence indicating that any of these defendants possess the capacity to waive the state's immunity. Accordingly, the court concludes that the defendants' participation in this action does not amount to a waiver of their constitutional immunity.

■ 6. Next, the plaintiffs assert that the South Carolina Legislature's enactment of its own just compensation provision and the statute giving rise to these proceedings constitutes a waiver of the defendants immunity. The state may waive its eleventh amendment immunity by enacting a statute to that effect. *Ford Motor Co., v. Dept. of Treasury of Indiana*, 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945). However, it has long been the rule of this district "that a State's consent to suit in Federal Court ... must be clearly and unmistakenly given." *Southern Railway Company v. South Carolina State Highway Department*, 246 F.Supp. 435 (E.D.S.C.1965). Based upon that principle, the court in *Southern Railway* concluded that the enactment of the just compensation provision

---

4. In their memorandum on remedy, the plaintiffs reference a number of issues regarding the applicability of the eleventh amendment. However, it is evident from that pleading that the only eleventh amendment issues before this court concern the doctrines of waiver and pendant claim jurisdiction. Hence, only those contentions will be considered here.

of the South Carolina Constitution does not amount to a waiver of the state's eleventh amendment immunity. *Id.* at 439. The plaintiffs have offered no rationale for the reversal of this precedent, and so it is dispositive of their contention to the contrary. Similarly, neither the South Carolina Coastal Zone Act of 1977 nor the more recent Beachfront Management Act clearly evinces a desire on the part of the legislature to waive the state's sovereign immunity. Rather, both § 48–39–180 and § 48–39–290 provide that actions arising under the legislation should be filed in the appropriate state tribunal. Therefore, the court concludes that neither the enactment of the just compensation provision of the South Carolina Constitution nor the passage of the coastal tidelands and wetlands legislation amounts to a waiver of the eleventh amendment.

7. Third, the plaintiffs assert that pursuant to the doctrine of pendant claim jurisdiction damages may be assessed against the defendants under S.C.Code Ann. § 48–39–290. The doctrine of pendant claim jurisdiction provides that once "a federal court obtains jurisdiction over a federal claim, it may adjudicate other related claims over which the court otherwise would not have jurisdiction." *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 117, 104 S.Ct. 900, 917, 79 L.Ed.2d 67 (1984). Nonetheless, if the pendant claim charges the state, or one of its officials acting in his official capacity, with a violation of state law, the eleventh amendment precludes a federal court from granting relief based upon the pendant claim. *Id.* at 121, 104 S.Ct. at 919. As outlined above, the plaintiffs have offered no support for their position that the defendants have waived their immunity, and thus, the holding of *Pennhurst* prevents this court from awarding the monetary relief provided in § 48–39–290 against the defendants.

## CONCLUSION:

Accordingly, having concluded that the defendants are immune from an award of money damages by virtue of the eleventh amendment, and that the plaintiffs' sole remedy is prospective injunctive relief against the individual defendants acting in their official capacity, it is

ORDERED, that the defendant John C. Hayes, III, in his official capacity as Chairman of the South Carolina Coastal Council, and the defendant H. Wayne Beam, in his official capacity as Executive Director of the South Carolina Coastal Council, and their successors in those official positions, be, and the same are hereby, enjoined from enforcing any construction prohibition as to vacant lots under the Coastal Management Act against the plaintiffs, their heirs, assigns, and devisees, with respect to the property currently owned by the plaintiffs and described more particularly as Lot No. 104 of the Hilton Head Beach Subdivision No. 1.

AND IT IS SO ORDERED.