939 F.2d 165
 33 ERC 1685, 60 USLW 2065, 21 Envtl.
L. Rep. 21,249
 John V. ESPOSITO, et al., Plaintiff-Appellant,
v.
The SOUTH CAROLINA COASTAL COUNCIL, a South Carolina
governmental agency; John C. Hayes, III, Chairman of the
South Carolina Coastal Council; H. Wayne Beam, Executive
Director of the South Carolina Coastal Council,
Defendants-Appellees.
Natural Resources Defense Council; South Carolina Coastal
Conservation League, Amici Curiae.
Barney L. CHAVOUS; Odessa K. Chavous, Plaintiffs-Appellees,
v.
The SOUTH CAROLINA COASTAL COUNCIL, a South Carolina
governmental agency, Defendant-Appellant,
and
John C. Hayes, III, Chairman of the South Carolina Coastal
Council; H. Wayne Beam, Executive Director of the
South Carolina Coastal Council, Defendants.
Natural Resources Defense Council; South Carolina Coastal
Conservation League, Amici Curiae.
 Nos. 89-1840, 90-2367.
 United States Court of Appeals,
Fourth Circuit.
 Argued July 18, 1990.
Decided July 3, 1991.
 
 Nancy B. Tecklenburg, C.C. Harness, III, argued (William L. Want, on brief), South Carolina Coastal Council, Charleston, S.C., for defendant-appellant.
 John V. Esposito, Randall M. Chastain, Hilton Head Island, South Carolina, for plaintiffs-appellees.
 Robertson H. Wendt, Jr., Hollings & Nettles, P.A., Charleston, S.C., Nina M. Sankovitch, Natural Resources Defense Council, New York City, for amici curiae.
 Before RUSSELL, WIDENER and HALL, Circuit Judges.
 WIDENER, Circuit Judge:
 
 
 1
 These consolidated cases deal with challenges to the judgments of the district court concerning claims that the defendants violated the fifth and fourteenth amendments of the United States Constitution. The district court in Esposito, No. 89-1140, rejected the plaintiffs' claim that South Carolina's Beachfront Management Act (Act) violated the due process and takings clauses of the fifth and fourteenth amendments. In Chavous, however, No. 90-2367, the district court entered judgment for the plaintiffs on their claim that the Act violated the takings clause and enjoined its enforcement. 745 F.Supp. 1168 (1990). We affirm the district court's judgment in Esposito, and vacate on account of mootness its judgment in Chavous.
 
 I.
 
 2
 In 1988, the General Assembly of South Carolina enacted the Beachfront Management Act, which amended certain sections of Title 48, Chapter 39 of the Code of Laws of South Carolina. This legislation recited the Assembly's finding that "[m]any miles of South Carolina's beaches have been identified as critically eroding." 1988 Act No. 634, Sec. 1. The Assembly noted that the beach/dune system along the coast served as a storm barrier protecting lives and property, generated a substantial portion of the State's tourism revenues, provided a habitat for species of plants and animals, and offered a natural, healthy environment enhancing the well-being of the State's citizens. 1988 Act No. 634, Sec. 1(a)-(d). The legislation further stated that the beach/dune system had been threatened by the presence of unwise development "too close" to the beaches and by the use of certain hard erosion control devices that had actually increased the vulnerability of beachfront property to damage. 1988 Act No. 634, Sec. 1. The Assembly accordingly approved a "comprehensive, long-range beach management plan" entailing "a gradual retreat from the system over a forty-year period." 1988 Act No. 634, Sec. 2.
 
 
 3
 Among the numerous specific provisions enacted to effectuate this plan, we need discuss only those implicated by the present actions. The plaintiffs' claims arose through the operation of the statutory requirement that the defendant, South Carolina Coastal Council, establish certain lines in each county fronting the Atlantic Ocean. S.C.Code Ann. Sec. 48-39-280(D) (Supp.1989). The first of these lines was the "baseline." As applied to the property involved in these actions, the Act required that this line be drawn at "the location of the crest of an ideal primary oceanfront sand dune" or, in areas where the shoreline had been altered by the construction of erosion control or other manmade devices, "where the crest of an ideal primary oceanfront sand dune ... would be located if the shoreline had not been altered." S.C.Code Ann. Sec. 48-39-280(A)(1) (Supp.1989). The Act next directed that a "setback line" be calculated. In order to implement the statute's stated policy of retreat, this line was established "landward of the baseline ... at a distance which is forty times the average annual erosion rate," but "no less than twenty feet from the baseline." S.C.Code Ann. Sec. 48-39-280(B)(1) (Supp.1989). The Assembly provided that these requirements be implemented by "utilizing the best available information and data" and set out specific procedures to be followed by the South Carolina Coastal Council in establishing the various lines. S.C.Code Ann. Sec. 48-39-280(A) (Supp.1989).
 
 
 4
 The plaintiffs in both Esposito and Chavous are owners of real property located in the Town of Hilton Head, Beaufort County, South Carolina. The lots of the Esposito plaintiffs have been improved with residential dwellings. In terms of the provisions of the Act, most of these dwellings were situated at least partially seaward of the baseline or within what the plaintiffs call the "dead zone," an area extending twenty feet landward of the baseline. The Act stated that any habitable structure "destroyed beyond repair" by natural causes or fire could not be rebuilt seaward of the baseline or within the dead zone. S.C.Code Ann. Sec. 48-39-290(B) (Supp.1989).[1] An administrative interpretation defined "destroyed beyond repair" to mean that "more than two thirds (66 2/3%) of the building components making up the structure are damaged to such a degree that replacement is required in order for the structure to be habitable, functional or sound." The Act also regulated attempts to make additions to existing structures and install recreational amenities. S.C.Code Ann. Sec. 48-39-290(B) (Supp.1989). The plaintiffs claimed that by virtue of these restrictions, especially the prohibition on the reconstruction of their dwellings in the case of destruction beyond repair, South Carolina had unlawfully taken their private property without just compensation and violated the due process clause.
 
 
 5
 The Chavous plaintiffs, on the other hand, own a vacant lot with no improvements. Under the statutory scheme, approximately ninety percent of their lot was situated seaward of the baseline or within the dead zone. The Act stated that no part of a new habitable structure could be constructed seaward of the baseline or in the dead zone. S.C.Code Ann. Sec. 48-39-300 (Supp.1989). The plaintiffs claimed that this prohibition of construction amounted to an unlawful taking of their private property without compensation and a violation of due process.
 
 
 6
 Before considering the substance of these claims, we should take into account the effect of recent amendments to the Act upon our review.[2] The plaintiffs' claims and the district court's judgments involved, of course, only the effects of the provisions of the 1988 version of the statute. The enactment of the 1990 Act during the pendency of this appeal, with its provisions for special permits and other changes that may affect the plaintiffs, does not relieve us of the need to address the plaintiffs' claims under the provisions of the 1988 Act. Even if the amended Act cured all of the plaintiffs' concerns, the amendments would not foreclose the possibility that a taking had occurred during the years when the 1988 Act was in effect. See Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency, 911 F.2d 1331, 1335 (9th Cir.1990). As the Supreme Court has recognized, "the government may elect to abandon its intrusion or discontinue regulations," but "no subsequent action by the government can relieve it of the duty to provide compensation for the period during which the taking was effective." First English Evangelical Lutheran Church v. County of Los Angeles, 482 U.S. 304, 317, 321, 107 S.Ct. 2378, 2389, 96 L.Ed.2d 250 (1987). We therefore must consider whether the 1988 Act effected a taking or due process violation during the period that it was in effect.[3]
 
 II.
 
 7
 The fifth amendment, which provides in relevant part that "private property [shall not] be taken for public use without just compensation," applies to the States through the fourteenth amendment. See Chicago Burlington and Quincy R.R. Co. v. Chicago, 166 U.S. 226, 17 S.Ct. 581, 41 L.Ed. 979 (1897). As an initial matter, we note that the courts have traditionally upheld the validity of setback lines and similar land use regulations against constitutional challenges. E.g. Gorieb v. Fox, 274 U.S. 603, 47 S.Ct. 675, 71 L.Ed. 1228 (1927); Euclid v. Ambler Realty Co., 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926); Welch v. Swasey, 214 U.S. 91, 29 S.Ct. 567, 53 L.Ed. 923 (1909). The plaintiffs argue, however, that the present case is distinguishable from these prior decisions and we therefore review their claims in light of the more recent Supreme Court takings clause cases.
 
 
 8
 In Keystone Bituminous Coal Association v. DeBenedictis, 480 U.S. 470, 485, 107 S.Ct. 1232, 1241, 94 L.Ed.2d 472 (1987) (quoting Agins v. Tiburon, 447 U.S. 255, 260, 100 S.Ct. 2138, 2141, 65 L.Ed.2d 106 (1980)), the Court stated that a land use regulation may constitute a taking if it "does not substantially advance legitimate state interests, ... or denies an owner economically viable use of his land." The district court in Esposito addressed the first prong of that takings test by holding that the State had "an important interest" in protecting its beaches and that the challenged statutes were "substantially related" to furthering this goal. The Esposito plaintiffs attack this conclusion, contending that the Act was neither based on a legitimate State interest nor substantially related to any proper State goal.
 
 
 9
 While the Court may not have elaborated on the standards for determining what constitutes a "legitimate state interest" or what relation between a regulation and the State's interest meets the requirement that one "substantially advance" the other, it has indicated that "a broad range of governmental purposes and regulations" will satisfy these requirements. Nollan v. California Coastal Comm'n, 483 U.S. 825, 834-35, 107 S.Ct. 3141, 3147-48, 97 L.Ed.2d 677 (1987). We are in agreement with the district court that the Assembly's stated purpose to "protect, preserve, restore, and enhance the beach/dune system" constituted a legitimate State interest and exercise of the police power of the State. South Carolina's beach/dune system is a valuable resource that not only protects life and property from the dangers of the ocean, but also provides a source of recreation and tourism-related revenue. The State's interest here was of the same nature as that approved in Keystone, 480 U.S. at 488, 107 S.Ct. at 1243, where the Court found that Pennsylvania had acted "to protect the public interest in health, the environment, and the fiscal integrity of the area."[4]
 
 
 10
 We further believe that the means chosen by the legislature bore a substantial relation to its goal of protecting this valuable resource. While the Esposito plaintiffs urge us to hold that the Assembly's policy of withdrawal of building seaward of the setback line is not a viable response to the situation of beachfront erosion, we view the matter as one in which "[s]tate legislatures ..., who deal with the situation from a practical standpoint, are better qualified than the courts to determine the necessity, character and degree of regulation which these new and perplexing conditions require." Gorieb v. Fox, 274 U.S. at 608, 47 S.Ct. at 677. The record in this case indicates that the decision to adopt a strategy of gradually withdrawing unwise development from the beach/dune system was a logical and sufficiently well-founded approach to dealing with beachfront erosion by attempting to restore the natural equilibrium between sand supply, wind, and waves. Having found that the "essential nexus," Nollan, 483 U.S. at 837, 107 S.Ct. at 3148, between the State's interest and its chosen means is present in this case, we will not second-guess the Assembly's decision.
 
 
 11
 The second prong of the takings analysis requires an inquiry into whether the Act denied the Esposito plaintiffs the economically viable use of their property. In Penn Central Transportation Company v. New York, 438 U.S. 104, 124, 98 S.Ct. 2646, 2659, 57 L.Ed.2d 631 (1978), the Court identified several factors as particularly significant in this inquiry:
 
 
 12
 The economic impact of the regulation on the claimant and, particularly, the extent to which the regulation has interfered with distinct investment-backed expectations are, of course, relevant considerations.... * So too, is the character of the governmental action.
 
 
 13
 See Georgia Outdoor Advertising v. City of Waynesville, 900 F.2d 783, 787 (4th Cir.1990); Naegele Outdoor Advertising, Inc. v. City of Durham, 844 F.2d 172, 176 (4th Cir.1988). The Esposito plaintiffs do not contend that the character of the governmental action in this case is the type of physical invasion or appropriation for public use that readily leads to a finding that a taking has occurred. See Loretto v. Teleprompter Manhattan CATV Corp., 458 U.S. 419, 426, 102 S.Ct. 3164, 3170, 73 L.Ed.2d 868 (1982). Rather, they argue that the enactment of the Act drastically diminished the value of their property.[5] They contend that because their property had significantly less economic market value after passage of the Act, they were effectively deprived of their rights and expectations of being able to sell and borrow money against their property.
 
 
 14
 In response to these contentions, we note that the courts have traditionally looked to the existing use of property as a basis for determining the extent of interference with the owner's "primary expectation concerning the use of the parcel." Penn Central, 438 U.S. at 136, 98 S.Ct. at 2665. We find that the Act permitted the Esposito plaintiffs to continue their existing use of their property and dwellings in the same manner that they could have used the property prior to its enactment. The plaintiffs, in fact, have stipulated that "[n]one of the Plaintiffs in the Esposito case have discontinued use of their property, as it was used before enactment of the subject Statutes...." They continued to retain the fundamental incidents of ownership, including the right to possess the property, exclude others from it, alienate the property and continue to use it for residential and recreational purposes; and they were significantly diminished only in their discretion to rebuild a structure in the speculative event of its virtually complete destruction. Although we are cognizant of the plaintiffs' claim that passage of the Act affected the value of the property and its potential attractiveness on the market, the Supreme Court has observed that neither diminution in property value, Penn Central, 438 U.S. at 131, 98 S.Ct. at 2662, nor "even substantial reduction of the attractiveness of the property to potential purchasers," Kirby Forest Indus. v. United States, 467 U.S. 1, 15, 104 S.Ct. 2187, 2196, 81 L.Ed.2d 1 (1984), will suffice to establish that a taking has occurred. In light of the plaintiffs' continued use of the property precisely as they used it prior to the passage of the Act, we are of opinion that the Esposito plaintiffs have not established that the regulation in question was "so onerous that it [had] the same effect as an appropriation of the property through eminent domain or physical possession." Williamson Planning Comm'n v. Hamilton Bank, 473 U.S. 172, 199 (esp. n. 17, at 199), 105 S.Ct. 3108, 3123, 87 L.Ed.2d 126 (1985).
 
 
 15
 We also reject the Esposito plaintiffs' due process claim. For the statute in question to be held in violation of the fourteenth amendment, it must be found "clearly arbitrary and unreasonable, having no substantial relationship to the public health, safety, morals or general welfare." Beacon Hill Farm Assocs. v. Loudoun County Supervisors, 75 F.2d 1081, 1085 n. 5 (4th Cir.1989) (quoting Village of Euclid v. Ambler Realty Co., 272 U.S. 365, 395, 47 S.Ct. 114, 121, 71 L.Ed. 303 (1926)). For the reasons discussed previously, we hold that the 1988 Act was substantially related to South Carolina's legitimate interest in protecting its beaches and therefore reject the plaintiffs' due process claim.
 
 
 16
 We next turn to the judgment of the district court in Chavous. In considering the plaintiffs' takings claim,[6] the district court concluded that the regulations contained in the Act did indeed bear a substantial relation to a legitimate State interest. On the second prong of the test, however, the district court decided that the Act had denied the Chavous plaintiffs the economically viable use of their property. The court enjoined further enforcement of the Act against the plaintiffs.
 
 
 17
 The defendants urge us to reverse the judgment of the district court and hold that the Act did not work a taking of the plaintiffs' property. The plaintiffs, on the other hand, ask that we affirm the judgment with its injunction prohibiting enforcement of the Act against them. We decline to take either course. The injunctive remedy granted by the district court has become pointless because the enjoined statute has been superseded by a significantly amended statutory scheme and is no longer in effect. See Tahoe Sierra Preservation Council, 911 F.2d at 1335-36. The district court, moreover, held that the remedy of damages was barred by the eleventh amendment and the plaintiffs have not challenged this ruling on appeal. We have no jurisdiction over a claim on which no effective relief can be granted. Mills v. Green, 159 U.S. 651, 653, 16 S.Ct. 132, 133, 40 L.Ed. 293 (1895). In remarkably similar context, we have only recently held that a changed zoning regulation rendered moot the contest of a prior regulation. 11126 Baltimore Blvd. v. Prince Georges County, 924 F.2d 557 (4th Cir.1991). In view of the mootness of the plaintiffs' claim for relief, we express no opinion concerning the correctness of the district court's determination that the 1988 Act effected a taking of the Chavous property.
 
 III.
 
 18
 For the reasons discussed above, we affirm the district court's judgment in Esposito. In Chavous, we vacate the judgment of the district court and remand to the district court with instructions that the case be dismissed as moot. See United States v. Munsingwear, Inc., 340 U.S. 36, 39, 71 S.Ct. 104, 106, 95 L.Ed. 36 (1950).
 
 
 19
 Accordingly, the district court's judgment in 89-1840 is
 
 
 20
 AFFIRMED and the district court's judgment in 90-2367 is
 
 
 21
 VACATED AND REMANDED WITH INSTRUCTIONS.
 
 K.K. HALL, Circuit Judge, dissenting:
 
 22
 Let me say, first, that I thoroughly agree with the purposes of the Beachfront Management Act, and second, that my agreement or disagreement with and the wisdom or folly of the Act ought not bear upon whether just compensation should be paid for its effectuation. The Just Compensation Clause is not a miniature variant of substantive due process, ready to slap the government with monetary liability where we believe a regulation is foolish yet not so utterly silly that we should strike it down in its entirety. I hope and expect that the legislative and executive branches will be wise, and that the "public use" for which they take, damage, destroy or diminish private property will be admirable. Nonetheless, the Just Compensation Clause does not apply only to poor governmental choices.
 
 I.
 
 23
 Before going on to our disagreements, I concur in the majority's judgment that the substantive due process claim of the Esposito plaintiffs was properly rejected by the district court. I cannot find fault in either the legislative end or means.
 
 II.
 
 24
 It is all too easy in a takings case to become enmeshed in the various tests, factors, and doctrines the Supreme Court has applied through the years. Penn Central Transportation Co. v. New York City, 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978) (three-factor test); Agins v. Tiburon, 447 U.S. 255, 100 S.Ct. 2138, 65 L.Ed.2d 106 (1980) (two-part test); Hodel v. Indiana, 452 U.S. 314, 101 S.Ct. 2376, 69 L.Ed.2d 40 (1981) (second Agins test only--"no economically viable use"); Loretto v. Teleprompter Manhattan CATV Corp., 458 U.S. 419, 102 S.Ct. 3164, 73 L.Ed.2d 868 (1982) (per se rule for "permanent physical occupations"). The Court itself has admitted that its inquiry is essentially ad hoc. Penn Central, 438 U.S. at 124, 98 S.Ct. at 2659. The Court's "tests" are not rigid, unforgiving yardsticks to be slavishly applied notwithstanding a draconian result. On the contrary, the tests are guidelines for resolving the question at the bottom of every case: whether the claimant has been "forc[ed] ... alone to bear [a] public burden[ ] which, in all fairness and justice, should be borne by the public as a whole." Armstrong v. United States, 364 U.S. 40, 49, 80 S.Ct. 1563, 1569, 4 L.Ed.2d 1554 (1960).[1] Who should pay for South Carolina's sudden change in land-use policy? I believe that fairness and justice require the expense to be borne by the public.
 
 
 25
 We are confronted with the claims of particular persons resulting from the Act's devastating effect on the value of particular property. The plaintiffs do not attack the facial validity of the Act; they challenge it as applied to them. Hence, they need not make the strict showing required by the "no economically viable use" test. Keystone Bituminous Coal Ass'n v. DeBenedictis, 480 U.S. 470, 495, 107 S.Ct. 1232, 1247, 94 L.Ed.2d 472 (1987). The Keystone claimants failed to show how the challenged act affected any particular property; the Esposito defendants have done so. This case is not a facial challenge, and the "no economically viable use" test should not apply to it. I disagree, therefore, with footnote 5 of the majority opinion.
 
 
 26
 The factors the Supreme Court most often uses in "as applied" takings cases were identified in Penn Central, 438 U.S. at 124, 98 S.Ct. at 2659. They are (i) the character of the governmental action, (ii) the extent of interference with reasonable investment-backed expectations, and (iii) the economic impact on the claimant. Application of these factors illustrates that "fairness and justice" require compensation in these cases.
 
 
 27
 The first prong of the Penn Central test--character of the governmental action--alludes to two potentially dispositive situations. If the government has committed or authorized a permanent physical invasion of private property, compensation is always required. Loretto v. Teleprompter Manhattan CATV Corp., 458 U.S. 419, 102 S.Ct. 3164, 73 L.Ed.2d 868 (1982). If the government acts to prohibit a "noxious use" of property, compensation is almost never required. Mugler v. Kansas, 123 U.S. 623, 8 S.Ct. 273, 31 L.Ed. 205 (1887). South Carolina is not occupying the claimants' lots, and I reject the notion that a beachfront bungalow is a "noxious use" of property. See infra note 2. The character of the governmental action does not, therefore, resolve this case.
 
 
 28
 The second and third of the Penn Central factors weigh heavily in the landowners' favor. Before the 1988 amendments to the Act, the Esposito claimants' lots and homes ranged in value from $205,000 to $450,000. The lame duck nature of their use of the property has caused a substantial diminution in value--35% in the opinion of the Beaufort County assessor. Most of the affected properties are mortgaged. Landowners who had equity that could serve as collateral for other loans have seen their nest egg disappear. Several lending institutions entirely refused to accept the doomed properties as security, notwithstanding that they still have some value. Prospective buyers have been equally hesitant. No affected properties have been sold since the Act amendments, though several have been on the market.
 
 
 29
 The "investment-backed expectations" of these landowners have been bludgeoned. Were these expectations "reasonable?" Lending institutions thought so. The county thought so, and assessed property taxes accordingly. The state allowed 49% of its coastline to become developed without interfering. Indeed, the state's coffers benefitted from the tax and tourism revenue generated by development of its beaches. I believe that a person could have purchased one of the affected properties with the reasonable expectation that his investment would not be affected by a drastic change in long-term land use policies.
 
 
 30
 Even under the majority's harsh application of the "no economically viable use" test, the Act would have clearly effected a compensable taking of the Chavous landowners' lots. The majority is able to avoid the issue[2] by a combination of two fortuities--subsequent amendments to the Act and the district court's unappealed holding that the Eleventh Amendment bars an award of just compensation against a state in a federal court.[3] I agree with the majority that a remand is necessary. However, I would not create a sweeping rule that a state whose statute has been enjoined may moot the injunction by tinkering with the statute. The recent amendments to the Act may or may not rectify its previous constitutional defects. At oral argument, the landowners made it clear that they still challenge the constitutionality of the Act, even as amended; there is plainly still a case or controversy, and I would not force the landowners to file a new suit. I would remand to permit the Coastal Council to move to dissolve the injunction.
 
 III.
 
 31
 Legislatures and administrators undoubtedly often face the choice between purchasing a property right or regulating it away. In these days of deficits, it must be tempting to choose the costless regulatory route. Perhaps the Framers would have ensured more efficient government by permitting thievery of private property for public uses. However, they sacrificed the expedience of this approach in favor of a system that requires a proposed public use be one for which the public is willing to foot the bill. As Justice Holmes put it,
 
 
 32
 a strong public desire to improve the public condition is not enough to warrant achieving the desire by a shorter cut than the constitutional way of paying for the damage.
 
 
 33
 Pennsylvania Coal Co. v. Mahon, 260 U.S. 393, 416, 43 S.Ct. 158, 160, 67 L.Ed. 322 (1922).
 
 
 34
 South Carolina now admits that its longstanding land use policies were ill-advised. Good government occasionally requires such admissions; history is a lesson, not a straightjacket. However, a governmental error is a collective error, and the burden of rectifying it should be borne by all, not just by those who unfortunately, but reasonably, relied on it.
 
 
 35
 Except as stated elsewhere in this opinion, I respectfully dissent.
 
 
 
 [1]
 We note that there appears to be a conflict between certain provisions of Sec. 48-39-290 (Supp.1989). Section (B) initially states that habitable structures destroyed beyond repair may be reconstructed "seaward of the setback line," provided that certain requirements are met. The statute later states, however, after section (B)(8), that "[n]othing in this section allows any rebuilding in the area from the baseline to twenty feet landward of the baseline." While the parties appear to agree that the latter provision controls, we express no opinion concerning which provision should be construed to govern activity in the area extending twenty feet to landward from the baseline. Rather, we will apply the more restrictive interpretation for purposes of reviewing the plaintiffs' claim that the statutory restrictions rise to the level of a taking
 
 
 [2]
 In 1990, the General Assembly returned to the Act and made several significant changes in the statutory scheme discussed above. The 1990 Act eliminated the dead zone so that activity in the area twenty feet landward of the baseline is now governed by the less restrictive regulations that apply to the rest of the area between the baseline and the setback line. S.C.Code Ann. Sec. 48-39-290(B) (Supp.1990). In addition, a definition of "[d]estroyed beyond repair" as meaning "more than sixty-six and two-thirds percent of the replacement value of the habitable structure ... has been destroyed" was codified. S.C.Code Ann. Sec. 48-39-270(11) (Supp.1990). Furthermore, the amendments gave the South Carolina Coastal Council authority to issue special permits allowing construction or reconstruction of habitable structures under certain conditions, even if such structures are located seaward of the baseline. S.C.Code Ann Sec. 48-39-290(D) (Supp.1990)
 
 
 [3]
 The plaintiffs in both Esposito and Chavous appear to urge us to consider also their takings and due process claims under the provisions of the 1990 Act. Because these amendments were enacted subsequent to the district court's judgments, there has been no decision by that court upon the question of whether the revised statutory scheme amounts to a taking or violation of due process. These questions, therefore, are not properly before us and we express no opinion upon them
 
 
 [4]
 In Lucas v. South Carolina Coastal Council, --- S.C. ----, 404 S.E.2d 895 (1991), the South Carolina Supreme Court, on a fact situation akin to that of the Chavous plaintiffs, held there was no taking of a beachfront plaintiff's property by the enforcement and application of the 1988 Beachfront Management Act involved here. The Court stated, among other things, that it followed the majority opinion in Keystone
 
 
 [5]
 The district court correctly drew attention to the "distinction between a claim that the mere enactment of a statute constitutes a taking and a claim that the particular impact of government action on a specific piece of property requires the payment of just compensation." Keystone, 480 U.S. at 494, 107 S.Ct. at 1246; see Beacon Hill Farm Assocs. v. Loudoun County Supervisors, 875 F.2d 1081 (4th Cir.1989). In the present action, it appears that the rebuilding provision of which the plaintiffs complain has not actually been applied to any piece of property. None of the Esposito plaintiffs had their homes destroyed beyond repair or were denied permission to rebuild by operation of the statute. Rather, their alleged injuries rest, like those of the plaintiff in Euclid Ambler Realty Co., 272 U.S. at 395, 47 S.Ct. at 121, "upon the broad ground that the mere existence and threatened enforcement of the [statute], by materially and adversely affecting values and curtailing the opportunities of the market, constitute a present and irreparable injury." In order to succeed on their claim, therefore, the plaintiffs must face the admittedly "uphill battle" of proving that the mere enactment of the Beachfront Management Act so denied them the economically viable use of their property as to constitute a taking. Keystone, 480 U.S. at 495, 107 S.Ct. at 1247
 
 
 [6]
 The Chavous plaintiffs also advanced a due process claim, but the district court declined to rule upon it after concluding that the plaintiffs were entitled to relief on their takings claim
 
 
 [1]
 Armstrong's admonition lacks the intellectually calming appearance of predictability of a two- or three-factor "test." A legal standard no better defined than "fairness" leaves any judge ill at ease. Nonetheless, one recent commentator, after an exhaustive inventory and analysis of the Supreme Court's takings cases, concluded that the "moral justification" for placing a public burden on a single individual is the real issue on which any given case turns. Peterson, The Takings Clause: In Search of Underlying Principles, 77 Calif.L.Rev. 1299 (1989) (Part I) and 78 Calif.L.Rev. 53 (1990) (Part II)
 
 
 [2]
 The South Carolina Supreme Court addressed a Chavous-style case in Lucas v. South Carolina Coastal Council, 404 S.E.2d 895 (S.C.1991). The state court, by a 3-2 margin, upheld the Act under the narrow "noxious use" exception to compensability. I agree entirely with the dissenters in Lucas. A noxious use is one that is "tantamount to a public nuisance." Keystone, 480 U.S. at 491, 107 S.Ct. at 1245. Living in a beach bungalow bears little resemblance to the noxious uses of property the Supreme Court has identified. Mugler v. Kansas, 123 U.S. 623, 8 S.Ct. 273, 31 L.Ed. 205 (1887) (distillery); Reinman v. Little Rock, 237 U.S. 171, 35 S.Ct. 511, 59 L.Ed. 900 (1915) (downtown livery stable); Hadacheck v. Sebastian, 239 U.S. 394, 36 S.Ct. 143, 60 L.Ed. 348 (1915) (urban brickyard); Miller v. Schoene, 276 U.S. 272, 48 S.Ct. 246, 72 L.Ed. 568 (1928) (red cedar trees infected with apple rust disease near commercial orchards); and Goldblatt v. Hempstead, 369 U.S. 590, 82 S.Ct. 987, 8 L.Ed.2d 130 (1962) (quarrying below water table near town that depended on groundwater supply). The rapidity with which rental beach houses are gobbled up by the public causes me to doubt that they are, at least yet, generally regarded as "tantamount to a public nuisance." Finally, the Act's gradual forty-year retreat scheme, rather than immediate destruction of all offending structures, is clear proof that the Esposito claimants' residences are not dire threats to public safety and welfare. A "public nuisance" ought to be abated, not phased out through a half-lifetime of attrition
 
 
 [3]
 I agree that this latter holding is not before the court, but I have strong doubts that it was correct. As the majority notes, the Fifth Amendment's Just Compensation Clause was one of the earliest guarantees of the Bill of Rights to be enforced against the states through the Fourteenth Amendment. Chicago Burlington & Quincy R. R. Co. v. Chicago, 166 U.S. 226, 17 S.Ct. 581, 41 L.Ed. 979 (1897). Inasmuch as the Supreme Court has now held that the Just Compensation Clause always requires compensation for any taking, notwithstanding subsequent repeal or invalidation of the offending regulation, First English Evangelical Lutheran Church v. Los Angeles County, 482 U.S. 304, 317, 107 S.Ct. 2378, 2387, 96 L.Ed.2d 250 (1987), the Eleventh Amendment's general bar of damages against states must yield. Otherwise, a recalcitrant state could nullify the Just Compensation Clause by simply refusing to furnish a procedure to assess and award compensation. The Clause could be converted from a fundamental constitutional right into an empty admonition